**STATE of Tennessee Appellee,**

v.

**Jerry Neal CARPENTER, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 1, 1989.

Permission to Appeal Denied by Supreme Court May 8, 1989.

Rehearing Denied June 27, 1989.

Joseph M. Tipton, Albert J. Harb, Knoxville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, James W. Milam, Asst. Atty. Gen., Nashville, Robert L. Jolley, Jr., David C. Jennings, Asst. Dist. Attys. Gen., Knoxville, for the State.

## OPINION

WADE, Judge.

The defendant, Jerry Neal Carpenter, appeals as of right from his conviction of first degree murder during the commission of a robbery. A life sentence was imposed.

The defendant alleges that the trial court committed prejudicial error as follows:

(1) by its failure to suppress as fruits of unconstitutional conduct evidence taken from his home, a dumpster, and witness Dean Herrell;

(2) by allowing witness Imogene Smith to testify of her conversation with Myrt Chapman concerning the identification of the defendant and his presence at the scene because such evidence was hearsay and violated the defendant's right of confrontation;

(3) by allowing witness Darrell Waddell to read certain material contained in a pretrial statement because it constituted inadmissible hearsay;

(4) by permitting the state to rehabilitate witness Dean Herrell on re-direct examination through leading questions and through the use of his prior consistent statements,

because the testimony violated the defendant's right to confrontation, the rule against hearsay and the authoritative guidelines governing re-direct examination procedure;

(5) by excluding the hospital records of the witness Waddell which tended to impeach his credibility; and

(6) by refusing to instruct the jury on the issue of accomplice testimony.

This court finds no reversible error and affirms the judgment.

Myrtle Chapman, the operator of Myrt's Package Store, was found dead at her place of business on Clinton Highway in Knox County on March 25, 1985, shortly after 7:00 P.M. She had been struck repeatedly with a sharp object. Blood spatters were found throughout the store. The Knox County Medical Examiner testified that there were approximately ten deep lacerations to the head and face of the victim. His opinion was that a hatchet could have been used to inflict the wounds.

A bank bag found next to the cash register was open and empty. Three adding machine tapes and a bank deposit slip were found on the counter near the bank bag or on the floor.

The victim's husband, J.D. Chapman, testified that his wife had discovered money missing from the bag on the morning of the offense as she prepared to make her bank deposit. He stated that on the day before, a Sunday, the only persons who had been behind the counter, where the money was generally kept, were his two nephews, John and Jack Head, and the defendant.

Shortly after he discovered the loss, Chapman asked the defendant if he had taken the money on the previous day. The defendant denied he had done so, volunteered to take a lie detector test, and offered not to return to the premises. The amount missing from the previous day was determined to be $270.00.

At 5:45 P.M. on the day of the murder, the defendant was observed in the package store telling the victim that he had cut himself under the left eye. After he made a telephone call, however, he left.

Imogene Smith testified that she talked by telephone to the victim on the afternoon of March 25th. The victim advised her that she would have to hang up because "that little son-of-a-bitch is coming back in the store." When Smith asked if she was talking about "the guy who stole your money," the victim replied affirmatively. Smith related that the victim had told her during a phone conversation earlier in the day that she suspected that the defendant was the thief and had informed him that she was going to have the money bag fingerprinted. The trial court admitted into evidence the victim's statements in the last telephone conversation as statements within the present sense impression exception to the hearsay rule.

Darrell Waddell, the defendant's first cousin, testified that he saw the defendant receive a cut under his left eye on the afternoon of March 25th. Between 5:30 and 6:00 P.M., the defendant went to the victim's place of business for a Band-aid and cold drinks. After Waddell and the defendant finished some chores at a nearby furniture store, the defendant announced that he was returning to Myrt's to get something else to drink.

Dean Herrell arrived at the furniture store just before the defendant returned at about 6:30 P.M. At that time, the defendant carried his beige jacket under his arm. Each of the three then took hits of LSD. Before the defendant left with Herrell, Waddell arranged to pick him up at an apartment. When Waddell arrived, he noticed that the defendant had dark spots on his jeans which appeared to be blood. The defendant changed clothes when they arrived at his residence. Waddell also heard the furnace door open and close when the defendant went downstairs.

Waddell and the defendant passed by Myrt's Package Store after they left the residence. When Waddell saw police cars and asked what was going on, the defendant said, "I think I've hurt J.D. (Chapman). Me and J.D. got in a fight." When Waddell stopped for gas later, the defendant said he would pay and pulled out several bills, including 5's, 10's, and 20's.

When asked where he had gotten the money, the defendant replied, "Darrell, I think I've killed Myrt." He then said, "She seen me getting into her money bag." The defendant told Waddell that Myrt had hit him on the head with a stick. After they attended an auction that evening, the defendant asked Waddell not to "tell on me.... If you don't tell nobody, nobody won't know."

Waddell then related that a handheld hatchet kept at a woodpile near the furniture store had disappeared between Sunday, March 24th, and Monday, March 25th. He testified that he had looked for the hatchet since then but had never found it.

Herrell said that he noticed a knot on the defendant's head when he arrived at the furniture store on the afternoon of March 25th. After Herrell gave the defendant a ride, the defendant paid for his gas. He saw the defendant throw the vest jacket he carried underneath his arm into a dumpster. Herrell said that he detected brown splotches on the defendant's pants. After he threw the jacket into the trash, the defendant told Herrell he thought he had killed someone. After Herrell dropped the defendant off, he noticed a one and one-half foot long hatchet left on the floorboard of his car. It was stained by the same brown color on the defendant's pants. Herrell threw the hatchet into a lake but never told anyone about it until the day of the trial. Herrell admitted to a drug addiction and sought treatment several months after the incident.

Detective Mike Lett, after conducting interviews of certain witnesses, found the defendant's shirt and vest in the trash dumpster. After acquiring a search warrant for the defendant's residence, he searched the ashes of the defendant's furnace. He found several metal pieces which could have come from burned jeans.

A serologist who made an analysis of the shirt and vest found blood stains consistent with that of both the defendant and the victim. He found blood on the victim's glasses which was consistent with that of both the victim and the defendant.

A metallurgist testified that the metal pieces from the ashes were rivets and fasteners similar to those used in the garment industry to make jeans.

The defense presented three witnesses. Charles Cox testified he saw a blue truck parked at Myrt's Package Store on March 25th. The time was established at 6:00 to 6:15 P.M. by Bernice Nance.

The defendant's mother testified that she usually obtained the clothes she wore at yard sales or from donations. She said she commonly burned any clothes that she could not use in her basement furnace.

## I

The defendant was successful in suppressing statements he provided to the investigating law enforcement officials. The trial court ruled that the state did not carry "its burden of proving that the defendant waived his right to counsel and gave an intelligent, knowing, and voluntary statement." The state did not appeal the ruling.

■ The defendant argues that the search warrant issued for and executed upon his residence was based upon the involuntary pre-trial statement. The items taken from the furnace, he contends, were "fruits of the poisonous tree." *See Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The defendant submits that there was insufficient untainted evidence upon which to issue the search warrant. *See U.S. v. Smith,* 730 F.2d 1052, 1056 (6th Cir.1984).

The affidavit upon which the search warrant was issued provides as follows:

On March 25, 1985, I examined the scene of the killing of Myrtle Chapman at Myrt's Package Store on Clinton Highway. Copious amounts of blood were at this scene. Upon further investigation, I interviewed Jerry Neal Carpenter and Darrell Waddell. Carpenter gave a statement in which he admitted killing Myrtle Chapman. Carpenter stated that he disposed of certain bloody clothes and bloody boots which he had been wearing at the time of the killing at the residence at 208 Black Oak Drive. Darrell Wad-

dell, to whom Carpenter confessed, confirmed the disposal of these clothes at this residence. I have shown copies of Carpenter's and Waddell's written statements to the above signed judge.

The defendant asserts that a reasonable redaction of the defendant's statement provides an insufficient basis for the search warrant. The state's redacted proffer is as follows:

On March 25, 1985, I examined the scene of the killing of Myrtle Chapman at Myrt's Package Store on Clinton Highway. Copious amounts of blood were at this scene. Upon further investigation, I interviewed ... Darrell Waddell to whom Carpenter confessed, confirmed the disposal of these clothes at the residence. I have shown copies of ... Waddell's written statement to the above signed judge.

The defendant submits that a detached magistrate could not glean from the redacted affidavit that Waddell was credible or was possessed of credible information. To what, the defendant asked, did he confess? The search warrant, he contends, contains no corroboration.

The totality of the circumstances test adopted in *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527 (1983), is controlling on this issue. The probable cause necessary to support the issuance of a warrant is "a flexible, common sense standard." *See Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

This court concludes that the redacted proffer by the state provides the requisite probable cause. The victim bled profusely at the scene. Waddell, to whom Carpenter confessed, confirmed that Carpenter had disposed of his clothes at the residence. The word "confess" commonly implies an admission to a particular act of wrongdoing. Taken in the context of the victim's death, the clear implication is that the defendant confessed his responsibility for the

victim's death. We hold that there was sufficient probable cause, independent of the defendant's confession, to support the issuance of the search warrant.

The admissibility of the clothes taken from the dumpster presents a separate question. The defendant argues that the shirt and vest were also acquired as a result of his involuntary, pre-trial statement. Detective Lett admitted that he first learned of the clothing's location from the defendant and that on the date of the search, March 29th, he had no corroboration from Herrell. Herrell, in fact, did not mention the trash dumpster until April 1st.

■ The trial court held that the state could use the items because the defendant had abandoned his clothing by placing them in the dumpster. The defendant submits that the trial court erred by applying fourth amendment abandonment analysis to a fifth amendment violation. The defendant is correct in this assertion.

■ The state nevertheless cites *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), for the proposition that if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444, 104 S.Ct. at 2509. We conclude, however, that the doctrine of inevitable discovery is not applicable on these facts.

■ The defendant's shirt and vest were found in the March 29th search. The defendant established at the suppression hearing that the trash would have been picked up on March 30th for transport to the landfill. Herrell provided the confirming information on April 1st. The defendant contends that if either the independent source rule or inevitable discovery doctrine apply,[1] they are to be applied

---

1. Even if there is a connection between an unconstitutional intrusion and material evidence, the evidence is admissible under either doctrine. The application of the independent source rule depends on "whether the police did in fact acquire certain evidence by reliance upon an un-

tainted source." W. LaFave, *Search and Seizure,* § 11.4(a) at 378 (2d Ed.1987).

The inevitable discovery doctrine asks "whether evidence found because of a fourth amendment violation would inevitably have been discovered lawfully." *Id.*

strictly when the evidence is obtained through wrongful conduct; "it is insufficient to show that it *could* have been found independently, it must be shown that it *would* have been." *U.S. v. Palumbo,* 742 F.2d 656, 660 (1st Cir.1984); *See U.S. v. Guarino,* 610 F.Supp. 371 (D.C.R.I.1984).

In this instance, the landfill operator testified that on March 30, 1985, the contents of the trash dumpster were taken to the landfill on Rutledge Pike in Knox County. The state argues that with this information, law enforcement officials, given the will and the manpower, eventually would have found the clothing by going through the freshest part of the landfill.

The record, however, does not indicate that the landfill operator necessarily knew which portion of the landfill had been used most recently, how much trash would have been deposited there over a period of two days, or whether a search of the area, by the sheer magnitude of the trash deposited, would have been successful.

The information which led to this evidence was obviously acquired as a direct result of the statement deemed by the trial court to have been involuntarily given and in conflict with the defendant's rights against self-incrimination. The theory of abandonment relied upon by the trial court does not apply to these circumstances.

The state's argument that the evidence would have inevitably been discovered by the state is not supported by the record. There is no clear indication that the shirt and vest could have been found no matter how great the effort. We therefore hold that the items themselves were wrongly admitted into evidence.

■ In the alternative, the state submits that the testimony by Herrell concerning disposal of the clothes was sufficiently attenuated by other circumstances so as to dissipate the taint under the rationale of *U.S. v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) and *State v. Story,* 608 S.W.2d 599, 602 (Tenn.Crim. App.1980).

In this regard, the state does not argue that the trial court committed error by excluding the defendant's statements. In *Story,* the trial judge held the appellant's confession inadmissible when he was denied his request for a lawyer. The issue presented was "whether the testimony of witnesses whose identities are discovered by the defendant's illegally obtained and inadmissible statement should likewise be held inadmissible." *Story,* 608 S.W.2d at 602.

The appropriate test in determining the admissibility of the testimony of a witness discovered by an unconstitutional means is whether "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'" *Wong Sun v. U.S.,* 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (Quoting *Nardone v. U.S.,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939)). *Story* turned on the fact that "the witnesses would probably have been discovered anyway." 608 S.W.2d at 602. Hence, there was no error in permitting Herrell to describe the defendant's action in disposing of the clothing in the dumpster, even though it was error to have admitted these items themselves into evidence. The discovery of Herrell as a witness was inevitable; the record does not demonstrate any untoward inducement or coercion in the acquisition of his statement. There was sufficient attenuation between the involuntary statement of the defendant and Herrell's testimony to render the testimony admissible. *Ceccolini,* 435 U.S. 268, 98 S.Ct. at 1056.

■ This court agrees with the state's contention that the admission of the clothing and its analysis by the serologist was harmless error. Under Rule 36(b), Tenn.R. App.P., "[a] final judgment ... shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." *See also Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Marlow,* 665 S.W.2d 410 (Tenn.Crim.App.1983).

Because the error here is constitutional, the question is whether this court can conclude beyond a reasonable doubt that the judgment was unaffected by the evidence of the shirt and vest taken from the trash dumpster. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. As we have already noted, Herrell was properly permitted to testify to the defendant's having disposed of these items. While introduction of the items lent credibility to Herrell's testimony, the evidence was, in part, cumulative. Waddell and Herrell described what appeared to them to be bloodstains on the defendant's pants. The defendant changed clothes immediately after the murder and had the opportunity to burn them. Other testimony established that he removed and possibly hid his vest and shirt. Given the weight of the evidence, particularly the defendant's confession of the murder to Waddell and the corroborative circumstances, this court must conclude that the error was in fact harmless and did not affect the results of the trial.

## II

The defendant contends that Imogene Smith should not have been allowed to testify about her conversations with the victim on the day of the murder:

(1) the first at about 9:00 A.M. concerning the victim's suspicion that the defendant was responsible for the prior day's theft; and

(2) the second at about 6:20 P.M. that the defendant was returning to her store.

The information the witness received from the victim in the first telephone conversation came into evidence as follows:

Assistant district attorney: Why [was the last telephone] conversation ended?

Smith: Because ... Jerry Carpenter came in.

The witness knew his name only because of her conversation with the victim between 9:00 and 9:30 that morning, shortly after the victim discovered the theft.

The defense also objected to the admissibility of the victim's statements to the witness in the last telephone conversation:

Victim: That little son-of-a-bitch is coming back in the store.

Smith: Who? Is it the guy you thought got your money?

Victim: Yes.

Smith: Wonder why he's coming back in?

Victim: I don't know but I'll call you back after he leaves.

The victim never called back and Smith's subsequent calls resulted in busy signals.

The statements constitute hearsay evidence. The expressions were made out of court, were offered as an assertion to show the truth of the matter asserted, and rest for their value on the credibility of the out-of-court asserter. *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983); *State v. Lewis*, 628 S.W.2d 750 (Tenn.Crim.App.1981).

The state argues, however, that the statements were spontaneous declarations and properly admitted under either the *res gestae* exception, citing *Shelton v. State*, 3 Tenn.Cr.App. 310, 460 S.W.2d 869 (1970), or as declarations of a present sense impression, under *Hall v. DeSaussure*, 41 Tenn. App. 572, 297 S.W.2d 81 (1956). *Res gestae* has been defined as follows:

> "*Res gestae* is from the Latin meaning 'things done'; and includes the circumstances, facts and declarations incidental to the main fact or transaction, *necessary* to illustrate its character, and also includes acts, words, and declarations which are so closely connected therewith as to constitute a part of the transaction." (emphasis added.)

*Shelton*, 460 S.W.2d at 873. (Quoting 1 Underhill's Criminal Evidence (5th Ed.) § 266, p. 664.)

The application of the *res gestae* [2] rule, still alive in Tennessee but often criticized,

---

2. In the earlier development of the law of evidence, *res gestae's* "very vagueness made it easier for courts to broaden its coverage and thus provide for the admissibility of certain statements in new situations." *McCormick on Evidence*, § 288 at 836 (3d Ed.1984). The term has been used to justify the admissibility of statements of (1) present bodily condition, (2)

is traditionally left in great measure to the discretion of the trial court. *Management Services v. Hellman,* 40 Tenn.App. 127, 289 S.W.2d 711 (1955).

■ Some authorities list unexcited statements of present sense impressions as exceptions to the hearsay rule. *See McCormick on Evidence,* § 298 at 860 (3d Ed.1984).[3] Others do not.[4] See D. Paine, *Tennessee Law of Evidence* (1974). After an extensive review of authorities, this court is unable to find Tennessee precedent for an exception designated as present sense impression. The proposed Tennessee Rules of Evidence make no reference to this concept.

■ This court prefers to avoid the murky concept of *res gestae.* It is probably not applicable to the challenged testimony in his case. The excited utterance exception to the hearsay rule is more appropriately applicable to the evidence introduced through Smith. This principle first requires a showing that the declarant made the statement while she was excited due to a startling event; then, that the statement was made soon enough after the event to minimize the opportunity for conscious fabrication. Paine, *supra,* § 66 (1974); *Canady v. State,* 3 Tenn.Cr.App. 337, 461 S.W.2d 53 (1970). The event must be sufficiently startling to suspend the normal, reflective though processes of the declarant. The primary consideration for the trial court is whether the comments are, because of the circumstances, reliable. *McCormick, supra,* § 297, at 854, 855.

■ The evidence in this case established that on the day of the murder the victim was "upset and crying" by her discovery of the theft of money taken from her bank bag the previous day. She suspected the defendant was the culprit and said so in her first conversation with Smith. The defendant's return to her store that afternoon obviously (by her epithet) stirred strong emotions in the victim. In this instance, the victim was not only startled by the discovery of the theft but also the return of the culprit to the scene for the third time on that day. Despite the length of time within which the victim reflected on the missing money, this court believes that her final comments resulted from the suspect's return to the scene rather than the theft itself. The statement was made as a consequence of her surprise at the event and was so spontaneous as to embody all the required elements of reliability. This court concludes that the evidence was admissible as an excited utterance.

■ The first contested statement, if not sufficiently contemporaneous with the discovery of the theft, was, in any event, properly allowed into evidence by the trial court for the limited purpose of identifying the defendant, who was not otherwise referred to by name, as the subject of the second contested comment. No other part of the initial phone conversation was admitted into evidence.

■ The defendant additionally submits that the admission of this testimony violated his constitutional right of confrontation. In *State v. Henderson,* 554 S.W.2d 117 (Tenn.1977), our Supreme Court adopted a three-prong standard governing the admissibility of out-of-court declarations:

(1) by implication the evidence must not be "crucial" nor "devastating";

(2) the state must make a good faith effort to secure the presence of the person whose statement is to be offered against the defendant; and

---

present mental states and emotions, (3) excited utterances, and (4) present sense impressions. *Id.* at 835.

**3.** Although McCormick cites *Hall v. DeSaussure* for authority that Tennessee embraces the present sense impression exception to the rule against hearsay, that notation is clearly in error. The *Hall* opinion demonstrates that the declaration was an excited utterance rather than a present sense impression. The present sense impression exception, although embraced by the Federal Rules of Evidence, has been criticized by authorities as having virtually no indicium of reliability.

**4.** At least twenty-seven states recognize the present sense exception. Reidinger, *Trends in the Law,* A.B.A.J., December 1987, at 108.

(3) the evidence offered under a hearsay exception must bear its own "indicia of reliability."

*Id.* at 119–120.

In this instance, the evidence was very helpful to the state. The hearsay statements were not, however, admitted to prove an essential element of the offense, only a circumstance, among others, which established his presence near the time of the murder. There was other substantial evidence establishing the defendant as the perpetrator. The victim was not available. The statement had independent indicia of reliability in that the events occurred simultaneous to the description by the declarant. The victim's credibility was not at issue at the time the statement was made. We thus find no violation of the defendant's confrontation rights.

This issue is without merit.

### III

After it had been established on cross-examination that Darrell Waddell had made prior inconsistent statements to law enforcement officials regarding the time he first learned that the defendant had taken money from the victim, the trial court allowed Waddell on re-direct to read the answer he gave from a prior statement:

He said that he got it on a Sunday.... Oh, but I know how much he got ... it was $140.00. I think $140.00. Some ... because we went to a friend's house, and we was sitting there and counting it, and I seen how much that he had but I didn't know where [he] had got it until he told me that, after he had done killed Myrt and everything, that he had stoled the money the Sunday that he had—that she had caught him.

The defendant argues that the evidence is hearsay.

A review of the record indicates that this witness had previously testified on cross-examination that he remembered the statement in which he told the police that he had seen the defendant with $140.00 in his possession on the Sunday before the murder. It is proper for the court to permit the witness to use a prior written statement to refresh his recollection. *Wharton's Criminal Evidence*, § 416 (13th Ed.1972). While the defendant contends that the state's obvious purpose was to prejudice the jury by introducing evidence of the theft on the day before the murder, the more reasonable interpretation is, as the state contends, that the state attempted to bolster the credibility of this witness by the introduction of the evidence. Neither purpose, however, is a proper basis for admissibility.

It is a better procedure to permit the witness to read the document and then respond to a specific question. While the trial court has wide discretionary authority over the propriety, scope, manner and control of the examination of witnesses, the procedure used in this instance was error. *Coffee v. State*, 188 Tenn. 1, 216 S.W.2d 702 (1948).

In context, however, the error must be deemed harmless. The witness could have reviewed the document before answering the specific question of the assistant district attorney general. His refreshed memory would have yielded essentially the same information. Cross-examination was effective. The credibility of this witness was tested thoroughly by defense counsel. The witness's testimony did not, in our opinion, depend on this means of "bolstering."

### IV

The defendant contends that the trial court committed error by permitting the state, on re-direct examination, to rehabilitate the witness Herrell through leading questions and through the introduction of prior consistent statements. He argues that this method of examination violated the defendant's right of confrontation, the rule against hearsay, and the established guideline for rehabilitative and re-direct testimony.

After a jury-out hearing, the trial court ruled that the state would not be allowed to ask the witness on re-direct examination about a statement he gave to

police on April 1, 1985; but it did allow the state to question the witness about a statement he made to certain patients and staff at the Peninsula Hospital on June 15, 1985.

The state acknowledges the general rule that evidence of prior consistent statements may not be used to rehabilitate an impeached witness but argues that the circumstances in this case fall within an exception. In *State v. Braggs*, 604 S.W.2d 883, 885 (Tenn.Crim.App.1980), this court cited D. Paine, *Tennessee Law of Evidence*, § 221 (1974). This treatise provides as follows:

> Most jurisdictions do not allow bolstering where the impeachment consists of mere introduction of inconsistent statements. Tennessee, however, seems to admit consistent statements to rebut this form of attack, at least where the consistent statement was made before the inconsistent.

Paine at 237–238 (1988 Cumulative Supp., at 138).

In this instance, the witness was cross-examined by defense counsel about a statement provided in October 1985 inconsistent with his testimony. The prior consistent statement by Herrell was admissible to rebut the inference that the witness' testimony on direct examination was the result of recent fabrication. *See Mays v. State*, 495 S.W.2d 833 (Tenn.Crim.App.1972).

■ The defendant avers that the admission of the prior consistent statement violates his right of confrontation. If the defendant was not afforded the right to confrontation by his counsel's effective cross-examination, the criteria announced in *Henderson* established the admissibility of the evidence. The testimony was not critical to establish an essential element of the offense; Herrell and his statement were available to the defendant; and the statements, which were made a part of Herrell's treating hospital records, bore an indicia of reliability.

We also find merit in the state's further contention that the method of re-direct examination by the state, if error, did not involve a substantial right or affect the judgment. Rule 36(b), Tenn.R.App.P.

## V

■ The defendant sought to introduce the hospital records of the witness Waddell on the issue of credibility. While the records themselves were excluded from evidence, defense counsel conducted a rigorous cross-examination of Waddell attacking his truthfulness. The trial court excluded the hospital records on grounds of relevancy. The context of these documents provide little if any information which would tend to impeach the credibility of the defendant above or beyond that achieved by the effective cross-examination.

The trial court did not abuse its discretion by the exclusion of the records.

## VI

■ The defendant contends that the trial court should have instructed the jury as to the manner in which accomplice testimony should be received and considered. The defendant correctly asserts that whether a person is an accomplice and whether there is sufficient corroboration "is a question for the jury under proper instructions." *Conner v. State*, 531 S.W.2d 119, 123 (Tenn.Crim.App.1975). The defendant argues that the circumstances are such that both Waddell and Herrell might have been deemed accomplices. Each had drug problems. Each was within the general proximity of the murder scene at the time of the victim's death. A witness saw a blue truck parked outside Myrt's on the afternoon of March 25th; Waddell owned a light blue truck. The probable murder weapon, a hatchet, was ultimately found to have been in Herrell's possession. The obvious inference is that the weapon came from Waddell's place of employment. Each made inconsistent statements.

■ Although these circumstances provide a basis for speculation as to the degree of Waddell's and Herrell's involvement in the robbery and in the murder, there was insufficient evidence in this record to require a jury instruction on accomplice testimony. Companionship, asso-

ciation, and presence, while factors in the ultimate determination, cannot without evidence of more direct involvement, trigger the pattern instruction for accomplice testimony. We conclude that there is no significant evidence that Waddell or Herrell were accomplices in the murder. But even if there were, there is also sufficient evidence to corroborate their testimony and tie the defendant to the murder of Myrtle Chapman.

This issue has no merit.

The judgment of the trial court is accordingly affirmed.

DAUGHTREY, J., and JOHN D. TEMPLETON, Special Judge, concur.