IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY 1997 SESSION



FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9604-CR-00120 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. L. T. Lafferty, Judge |
| QUANTREAL UNDERWOOD, | * | (Second Degree Murder and |
| Appellant. | * | Two Counts of Aggravated Robbery) |

For Appellant:

Marvin E. Ballin, Attorney
and
Mark A. Mesler, Attomey
Ballin, Ballin & Fishman, P.C.
200 Jefferson Avenue
Suite 1250
Memphis, TN 38103

For Appellee:

Charles W. Burson
Attorney General & Reporter

Ruth Thompson
Counsel for the State
450 James Robertson Parkway
Nashville, TN 37243-0493

James A. Wax, Jr.
and
Karen Cook
Assistant District Attorneys General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Quantreal Underwood, was convicted of second degree murder and two counts of aggravated robbery.[1] The trial court imposed a Range I, twenty-five-year sentence for second degree murder and two concurrent eight-year sentences on each count of aggravated robbery.

In this appeal of right, the defendant challenges the sufficiency of the evidence; he claims that the trial court erred by allowing evidence of an excited utterance as an exception to the rule against hearsay; and he complains that the twenty-five-year sentence was excessive.

We find no error and affirm the judgment of the trial court.

During the early morning hours of August 28, 1993, the victim, Dorrell Eggleston, was shot during a robbery of the Serve-Rite Market in Memphis. Twenty-three years of age at the time of the shooting, the victim died forty days later.

Jerome Bond, Jr., was attempting to leave the store when four or five armed males in black ski masks entered the store and ordered its occupants to the floor. According to Bond, four or five shots were fired. One of the robbers, who had a knee to Bond's back and a gun to his face, took his wallet, containing approximately $140.00. Bond recalled that another of the robbers, in response to a customer who was not cooperating, ordered another robber to "clock" the customer; however, no more shots were fired. It was only after the robbers left that Bond discovered that the victim had been shot.

---

[1]The jury acquitted the defendant on murder in the perpetration of a felony and returned a verdict of second degree murder on a charge of premeditated, deliberated first degree murder.

2

Bond, who knew the defendant "by face," recalled seeing him standing outside the store just before the robbery; however, he was unable to identify any of the masked robbers. Bond remembered that one of the robbers had a .380 automatic pistol and that one of the shots sounded like a shotgun blast.

Andrew Bolden, the night manager at the market, was tending the cash register and talking on the telephone at the time of the robbery. He testified that there were about five customers in the store, including Bond and the victim, when three armed men wearing stocking masks entered the store and ordered the occupants to the floor. He recalled that one of the robbers ordered another to shoot a handicapped customer who was unable to lie on the floor. That customer was not shot. Bolden recalled that one of the robbers took money from the cash register.

After the robbery, Bolden discovered that the victim had been shot. Bolden recalled hearing four shots, some of which sounded different than others. He observed a bullet hole in the storage area near the victim and what appeared to be shotgun pellets above the door.

Caroline Hollister of the Memphis Police Department testified that when she arrived at the market, she asked the victim who had shot him. Describing the victim as scared and agitated, the officer recalled that the victim named the defendant and a Spencer Payne.[2]

Anthony Yarborough witnessed the latter part of the Serve-Rite robbery. After hearing shots from his residence, he looked across the street in time to see some men exit the Serve-Rite and enter two different cars; one was a white

_____

[2]No one by the name of Spencer Payne appears in the transcript of the trial.

Hyundai and the other a maroon Chevrolet. Yarborough recalled seeing a shotgun and observed that one of the men had a stocking over his head. He recognized one of the two getaway cars as that of Roderick Turner who lived in the neighborhood. Yarborough testified that he had observed the defendant, whom he did not know but had seen before, driving the white car earlier in the day. Explaining that he was nervous and afraid for his family, Yarborough was unable to point out the defendant from the witness stand.

Demetrius Henderson, who had pled guilty to second degree murder and two counts of aggravated robbery because of this incident, testified for the state.[3] He recalled that on the day of the robbery, the defendant, who was accompanied by his cousin, claimed that he had been robbed of his cocaine and would pay $700.00 and an ounce of cocaine for his assistance in this matter. Henderson testified that he joined with the defendant and six other men, all of whom were in two cars, a Hyundai and a Chevrolet, in an effort to find the defendant's robber. The defendant, Dennis Smith, and Demarcus Radliff were in the Hyundai. Henderson, Charles McGaughy, Thomas Watkins, Lee Antonio Boyd, and Carl Porter got into the Chevrolet.

Henderson testified that they first went to a residence but found no one at home. He stated that the men then proceeded to the Serve-Rite. According to Henderson, the defendant, who had purchased masks, handed them out to each of the participants before they went into the store. All but one was armed. The defendant, who gave Radliff .32 caliber bullets, had a .380 and another man had a shotgun. Porter, who was the only one without a gun, stayed in the car. Henderson said he had a .22, Boyd a .32, Radliff a .32, McGaughy a .380, and Watkins a 12

---

[3]Henderson received a sentence of twenty-eight years.

gauge shotgun. Henderson identified McGaughy as the robber who ordered the store occupants to the floor. He recalled that the robber with the shotgun, Watkins, fired before the others. Henderson, who denied firing a shot, testified that "a lot of people fired." He stated that Watkins and the defendant went to the back of the store during the course of the robbery.

By the time of this trial, McGaughy had also pled guilty to second degree murder and two counts of aggravated robbery. A witness for the state, he testified that the defendant claimed that he had been robbed and wanted some help. He recalled that the defendant stopped to acquire some stocking caps before the men entered the Serve-Rite. McGaughy claimed that he was without his mask and never fired his weapon, a .380, but conceded that he had "laid [two] people down" during the robbery. He claimed that he never received the quarter ounce of cocaine, the "juice" of crack, or the $700.00 the defendant represented he would pay. McGaughy admitted driving a burgundy Chevrolet and said the defendant was in a small white sports car. On cross-examination, McGaughy admitted that he had failed to mention to police that the defendant entered the store. He acknowledged that he had told officers that Watkins, who he said had shot the victim, and Henderson did the shooting during the robbery.

Dr. Jerry Francisco, the Shelby County Medical Examiner, performed an autopsy. He testified that the victim had two gunshot wounds which did damage to the spinal cord and his lungs, liver, and other internal organs. Dr. Francisco measured one of the bullets at 32/100 of an inch.[4] He explained that the victim, who was paralyzed from the neck down because of the shooting, died from the infections caused by the wounds.

---

[4]There was no ballistics analysis. The two bullets were designated as medium caliber.

The defendant presented no proof.

I

In challenging the sufficiency of the evidence, the defendant contends that the proof at trial was simply inadequate to establish that the defendant either committed or was criminally responsible for the robbery of either Bond or the Serve-Rite or the shooting of the victim. The defendant points out the inconsistencies between statements made by his co-defendants to police and those made at trial. The defendant contends that the testimony of the co-defendants was uncorroborated.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as the triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). This court may not re-evaluate the evidence or substitute its inferences for those drawn by the jury. Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). A conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. It is aggravated, and thus a Class B felony, when a deadly weapon is utilized or the victim of the robbery suffers serious bodily injury. Tenn. Code Ann. § 39-13-402. One who knowingly kills another can be found guilty of second degree

6

murder, a Class A felony. Tenn. Code Ann. § 39-13-210. In this state, one may be criminally responsible for the commission of offenses if he acts with the intent to promote or assist in the commission of the offense. Tenn. Code Ann. § 39-11-402. Here, there was proof that the defendant was one of several armed, masked men who robbed a convenience market and one of its customers, shooting the victim in the process. The victim identified the defendant, who others said was armed with a .380 pistol, as one of two men who fired the shots which ultimately resulted in his death. There was evidence from co-defendants that the defendant was the leader in the commission of the crimes and had utilized a white Hyundai automobile. One state witness testified that he had seen the same car driven by the defendant earlier that day. The testimony of another witness, not charged with this offense, placed the defendant at the scene of the crime.

A defendant, of course, cannot be convicted upon the uncorroborated testimony of an accomplice. Sherrill v. State, 321 S.W.2d 811, 814 (Tenn. 1959). The general rule is that there must be some fact testified to entirely independent of accomplice testimony which, taken by itself, leads to an inference not only that a crime has been committed but that the defendant is implicated in that crime. State v. Fowler, 373 S.W.2d 460, 463 (Tenn. 1963). Only slight circumstances, however, are required to furnish the necessary corroboration. Garton v. State, 332 S.W.2d 169, 175 (Tenn. 1960). Here, the testimony of Jerome Bond and Anthony Yarborough, was sufficient to provide the necessary corroboration. Other proof, accredited by the jury, established each and every element of the three offenses. Thus, the evidence was sufficient.

II

At trial, the defendant lodged an objection to the testimony of Officer

Hollister regarding the statement made by the victim that he had been shot by "Spencer Payne and Quantreal Underwood." The trial court admitted the evidence under the excited utterance exception to the rule against hearsay but found that it did not qualify as a dying declaration exception. See Tenn. R. Evid. 803(2) and 804(b)(2). Rule 803(2) permits the admission of a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The statement should be made soon enough after the event "to minimize the opportunity for conscious fabrication." State v. Carpenter, 773 S.W.2d 1, 9 (Tenn. Crim. App. 1989). "The event must be sufficiently startling to suspend the normal, reflective thought processes of the declarant." Id. The primary consideration is whether the statement offered into evidence can be deemed reliable under the circumstances of which it was made. Id. That is, in order to qualify as an exception to the rule against hearsay, the statement should have been made "at a time so near [a startling event] as to preclude the idea of deliberation and fabrication." State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). Whether statements qualify as excited utterances is left in great measure to the discretion of the trial judge. State v. Payton, 782 S.W.2d 490, 494 (Tenn. 1989).

Here, the trial court conducted a hearing, considered the circumstances, and ruled that the statement qualified within the exception. Implicit in the ruling is that the statement was so close in time and place to the shooting of the victim so as not to be the product of reflective thought. Officer Hollister was the first on the scene. She responded to the call within a couple of minutes. There was proof that the victim, lying in his own blood and fearful of being left alone, was under extreme stress, making it unlikely that he had the time or inclination to contemplate and reflect on a response. In our view, the trial court properly admitted the

8

testimony.

III

In imposing the maximum sentence possible, the trial court found the following enhancement factors applicable to the second degree murder conviction:

> (1)     The defendant was a leader in the commission of the offense;
>
> (2)     The offense involved more than one victim;
>
> (3)     The defendant used a firearm; and
>
> (4)     The defendant had no hesitation about committing a crime when the risk to human life was high.

Tenn. Code Ann. 40-35-114(2), (3), (9), and (10).

For a Range I offender, a Class A felony warrants a sentence of between fifteen and twenty-five years. The range is eight to twelve years for a Class B felony. Tenn. Code Ann. § 40-35-112(a)(1)(2). Because the trial court imposed the minimum sentences possible for each of the aggravated robberies, the defendant challenges only the twenty-five year sentence for second degree murder. He argues that the trial court failed to adhere to the principles of sentencing as set out by the legislature and improperly applied the enhancement factors. The defendant specifically complains about the trial court mentioning the twenty-five year sentences imposed upon those who pled guilty, saying "I can't see any difference between you and them."

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing

9

in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). See State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a felony conviction, the presumptive sentence is the minimum within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court may set the sentence above the minimum. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210. The sentence may then be reduced within the range by any weight assigned to the mitigating factors present. Id.

The sentencing act clearly contemplates individual sentencing. Yet, in our view, there are purposes under the act which would support a lengthy sentence:

> (1)     Every defendant shall be punished by the imposition of a sentence justly deserved in relation to the

10

seriousness of the offense;

> (2)    This chapter is to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions.

Tenn. Code Ann. § 40-35-102(1) and (2).

While there was no evidence that the murder involved more than one victim, there were other enhancement factors properly applied. Based upon the testimony at trial, the defendant was clearly the leader in the commission of the offense; there was proof that he organized the participation of all of the others involved in the crime. Clearly, the defendant utilized the firearm in the commission of the crime and helped arm the others who assisted in the offense. Tenn. Code Ann. § 40-35-114(2) and (9). There was evidence upon which the trial court could conclude that the defendant had no hesitation about committing the crime when the risk to human life, including others besides the victim, was high. Tenn. Code Ann. § 40-35-114(10). There were several weapons. More than one robber fired shots. There were innocent bystanders endangered by the events. No mitigating factors were listed. The considerable weight of those enhancement factors that were properly applied would warrant the twenty-five year sentence. See State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995), perm. app. denied (Tenn. 1995).

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
John H. Peay, Judge


_____
Thomas T. Woodall, Judge

12