# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### DECEMBER SESSION, 1998

FILED

February 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9712-CC-00523 |
| | ) | |
| Appellee | ) | |
| | ) | **GREENE COUNTY** |
| vs. | ) | |
| | ) | **Hon. James E. Beckner, Judge** |
| **STEPHEN FREEMAN,** | ) | |
| | ) | **(Flagrant Nonsupport)** |
| Appellant | ) | |

For the Appellant:

**D. Clifton Barnes**
Assistant Public Defender
Third Judicial District
1609 College Park Drive, Box 11
Morristown, TN 37813-1618

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Todd R. Kelley**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**C. Berkeley Bell, Jr.**
District Attorney General

**Cecil C. Mills**
Asst. District Attorney General
109 South Main Street
Greenville, TN 37743

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Stephen Freeman, appeals as of right his conviction by a Greene County jury for flagrant nonsupport, a class E felony. The trial court imposed a sentence of two years confinement. On appeal, he raises four issues: (1) denial of pre-trial diversion; (2) improper admission of hearsay evidence; (3) sufficiency of the evidence; and (4) excessive sentence.

After review, the judgment of the trial court is affirmed.

## BACKGROUND

In 1987, Lydia Freeman was granted a divorce from the appellant and was awarded custody of the parties' minor children whose ages were ten and two. At the time of the divorce, the parties resided in Greene County. In 1989, the appellant's child support obligations were modified to reflect scheduled payments of $750.00 monthly; however, as long as he provided medical insurance coverage for his children, his monthly obligation was established at $600.00. Following the divorce, the appellant moved to Kingsport while Mrs. Freeman remained in Greenville with the children.

In March of 1991, the appellant confided in a friend that "he was upset with his ex-wife" and "that he was going to leave the state and if they could not find him, he was not responsible for paying child support." Around March of 1991, the appellant also advised his ex-wife, Mrs. Freeman, that he was leaving and she needed to make arrangements for medical insurance coverage for the children. The appellant informed Mrs. Freeman that he would be staying with his mother in North Miami Beach.

2

In April or May of 1991, the appellant stopped paying child support. Mrs. Freeman contacted the child support division of the Greene County District Attorney General's office to assist her in the collection of child support payments. Enforcement efforts proved unsuccessful. In November, 1991, Mrs. Freeman received a letter from the appellant informing her that he was employed with the Dade County, Florida school system. This employment was apparently short lived. In April of 1994, the appellant was indicted for the current offense alleging flagrant non-support of his two minor children for the period "May 30, 1991 to April 11, 1994." The computed arrearage in child support payments during this period totaled $22,980.68.[1] During this time the appellant maintained out of state residency in Florida and North Carolina.

At the time of the parties' divorce in 1987, the appellant was employed with the Greene Valley Development Center. Mrs. Freeman was employed as a part-time instructor at Walters State Community College. The appellant is a clinical psychologist who has held employment with schools, hospitals, mental health centers and child development centers. He holds a doctorate from the University of Tennessee in Education Psychology and has written two books which have been published.

The appellant did not testify at trial. Dr. Linda Thompson of Abington, Virginia, who began treating the appellant in 1986 shortly before his divorce, did testify on behalf of the appellant. Dr. Thompson, a psychiatrist, diagnosed the appellant as suffering from severe clinical depression. She related that, in 1990, the appellant was involved in an automobile accident which exacerbated his depression. Dr. Thompson released the appellant in August, 1991, to return to work with Dade

---

[1]During the period May, 1991, through April, 1994, the appellant paid child support payments directly to Mrs. Freeman totaling $1,769.32. This amount was credited in the calculations of the above figures. We note, however, references at trial of arrears in excess of $28,000. We are unable to reconcile this figure with the actual computation of thirty three month (indicted period) X $750.00 per month less the credited amount of $1,769.32.

County Schools. Her treatment continued following his return to nearby Shelby, North Carolina. Dr. Thompson opined that, as a result of neurological damage stemming from the appellant's automobile accident, he was unable to currently "maintain his profession as a clinical psychologist." She acknowledged that her notes indicated that the appellant had opened an office in the practice of clinical psychology in Shelby, North Carolina. In addition, the appellant's brother, a teacher in the Dade County school system, testified that the appellant lived with him and his mother in Florida. During this period, the brother noted that the appellant appeared to be "lethargic" and suffered from aches and pains from his 1990 automobile accident.

Based upon this proof, the jury found the appellant guilty of flagrant nonsupport.

## I. PRE-TRIAL DIVERSION

First, the appellant challenges the trial court's finding that the district attorney general did not abuse his discretion in denying pre-trial diversion.[2]

In his denial of diversion, the district attorney general observed:

> this defendant has used any and all means at his disposal in order to avoid his legal obligation in all respects, and particularly in respect to the support and maintenance of his minor children. Each time that he failed to make the legally required support payment was a separate conscious act on his part to avoid his obligations. And when he was being brought in to court in an effort to hold him in contempt for failure to meet these obligations he exacerbated his situation by fleeing the State of Tennessee in an effort not to pay for the care and upkeep of his children. These actions are intentional, willful, flagrant are not casual under any circumstances. These actions are evidence of a continuing course of conduct with the objective of not having to meet the legal obligation imposed upon this defendant for the support of his children. Such conduct is reprehensible and needs to be deterred.

---

[2]The appeal from the denial of pre-trial diversion is contained within the appellant's appeal as of right as provided by Rule 38, Tenn. R. Crim. P., which became effective July 1, 1997.

The district attorney general's decision regarding pretrial diversion is presumptively correct, and the trial court will only reverse the decision when the appellant establishes that there has been a patent or gross abuse of prosecutorial discretion. State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); see also State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App), perm. to appeal denied (Tenn. 1995), (citing Hammersley, 650 S.W.2d at 356). In order to establish abuse of discretion, "the record must show an absence of any substantial evidence to support the district attorney general's refusal to grant pretrial diversion." Id. The trial court may only consider evidence considered by the district attorney general in the decision denying pretrial diversion, State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994), and the trial court may not substitute its judgment for that of the district attorney general when his decision is supported by the evidence. State v. Watkins, 607 S.W.2d 486, 489 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1980).

For purposes of our review, the findings of the trial court are binding on this court unless the evidence preponderates against such findings. Houston, 900 S.W.2d at 715. We review the case, not to determine if the trial judge has abused his discretion, but to determine if the evidence preponderates against the finding of the trial judge who holds that the district attorney general has or has not abused his discretion. Watkins, 607 S.W.2d at 489. Thus, the underlying issue for our determination remains whether or not, as a matter of law, the prosecutor abused his discretion in denying pretrial diversion. Carr, 861 S.W.2d at 856.

Although the appellant may appear to be an excellent candidate for pretrial diversion, the focus of diversion does not rest solely upon the alleged offender. In appropriate cases, the circumstances of the offense and the need for deterrence may outweigh all other relevant factors and justify a denial of pretrial diversion. Carr, 861 S.W.2d at 855. The circumstances of this case indicate that this was not

a crime of impulse. Month after month for a total of thirty-three months, this appellant consciously chose to ignore his child support obligation. The appellant asks the district attorney general to divert all criminal charges against him yet, at the same time, he makes no attempt to correct his wrongdoings. For a district attorney general to seek an indictment under these facts, without any provision for scheduled payments of arrears, would, in effect, be an exercise in futility.

The district attorney general also denied the appellant diversion based upon the need to deter others from committing similar offenses. See e.g., Hammersley, 650 S.W.2d at 355; Markham, 755 S.W.2d at 853. Additionally, the district attorney general referred to the magnitude of the victims' losses. We agree that the appellant's failed obligations are excessive and were appropriately considered by the district attorney general. See e.g., Carr, 861 S.W.2d at 854.

Before a reviewing court can find an abuse of discretion, the record must show an absence of any substantial evidence to support the district attorney general's denial of pretrial diversion. Hammersley, 650 S.W.2d at 356 (emphasis added). Upon review of this case, the record provides substantial evidence to affirm the trial court's judgment that the district attorney general did not abuse his discretion in denying pretrial diversion. This issue is without merit.

## II. IMPROPER ADMISSION OF HEARSAY EVIDENCE

The appellant contends that the trial court erred by permitting the Deputy Clerk and Master of the Greene County Chancery Court to read into the record a judgment of that court dated June 18, 1991, in which the appellant had sought

abatement of his child support payments with a counter-application for contempt filed by his ex-wife:

> It will be remembered that this cause was originally set for hearing on April 29, 1991 but was continued at the request of the Plaintiff. And, when the matter was called for hearing on its merits, <u>Thomas Jessee, Esquire, appeared and reported to the Court that the Plaintiff was in Florida and had declared his intention not to appear</u> . . .

(emphasis added).

The appellant argues that the emphasized portion was hearsay and should have been redacted because Thomas Jessee was not called as a witness thereby violating the confrontation clause of the state and federal constitutions. First, the State argues that the statement is not hearsay because it was not offered to prove the truth of the matter asserted. Alternatively, the State contends that the statement falls within the hearsay exception under Tenn. R. Evid. 803(1.2)(C), as "a statement by a person authorized by the party to make a statement concerning the subject."

Initially, we note that statement of his attorney is hearsay within hearsay under Tenn. R. Evid. 805. However, the court order falls within the hearsay exception contained in Tenn. R. Evid. 803(8) for public records and reports. Additionally, the statement of the attorney falls under the admission by party-opponent exception to the hearsay rule as a "person authorized by the party to make a statement concerning the subject." Tenn. R. Evid. 803 (1.2)(C). As the State correctly noted, "[l]awyers are agents and have prima facie authority to speak for their clients. . ." <u>Simmons v. O'Charley's, Inc.</u>, 914 S.W.2d 895, 902 (Tenn. App.), <u>perm. to appeal denied</u>, (Tenn. 1995). Accordingly, the statement was admissible as a hearsay exception. In <u>State v. Henderson</u>, 554 S.W.2d 117, 119-20 (Tenn. 1977), our supreme court enumerated the three criteria that must be met in order to satisfy the appellant's confrontation rights:

(1)  The evidence must not be crucial or devastating;
(2)  The State must make a good faith effort to secure the presence of

the person whose statement is to be offered against the defendant; and
(3) the evidence offered under a hearsay exception must bear its own "indicia of reliability."

In the present case, the challenged evidence established the appellant's presence in the state of Florida and his intention not to return to Tennessee. We conclude that this evidence was merely cumulative to and corroborated the testimony of other witnesses who testified as to the appellant's relocation to Florida. Specifically, the record establishes that the appellant introduced proof of his relocation to Florida through both the testimony of his brother and his psychiatrist. This fact was repeatedly developed at trial, almost with every witness, without objection. Accordingly, this evidence was neither "crucial" nor "devastating." See, e.g., State v. Oody, 823 S.W.2d 554, 564 (Tenn. Crim. App. 1991); State v. Carpenter, 773 S.W.2d 1, 10 (Tenn. Crim. App. 1989). Accordingly, we find no violation of the appellant's confrontation rights.

We conclude that the trial court did not abuse its discretion by the admission of the unredacted court order containing the statement of the appellant's attorney. Accordingly, this issue is without merit.

### III. SUFFICIENCY OF THE EVIDENCE

Next, the appellant challenges the sufficiency of the convicting evidence. Specifically, he argues that he was unable to meet his child support obligations due to his physical and mental disabilities and his inability to maintain employment. A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75

(Tenn. 1992), <u>cert. denied</u>, 507 U.S. 954, 113 S.Ct. 1368 (1993). Viewing the evidence under these criteria, it is this court's responsibility to affirm the conviction if the proof was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994), <u>cert. denied</u>, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The jury found the appellant guilty of flagrant nonsupport pursuant to Tenn. Code Ann. § 39-15-101(d)(1). In order to obtain a conviction under this statute, the State must prove that the defendant left or remained outside of the State of Tennessee in order to avoid a legal duty of support. <u>See</u> Tenn. Code Ann. § 39-15-101(d)(1). The record reflects undisputed testimony that the appellant left the State of Tennessee for Florida with the intent to avoid his child support payments. The appellant remained in the state of Florida for a period of time where he obtained employment and still neglected his obligations to support his two minor children. Thereafter, the appellant moved to Shelby, North Carolina and established a practice there without payment of his obligations. However, the appellant found the money to pay his psychiatrist and his monthly payments to the YMCA. Therefore, considering all the proof presented at trial, we conclude that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. This issue is without merit.

## IV. SENTENCING

In his final issue, the appellant challenges the trial court's imposition of the maximum sentence and argues that this court has the authority to reduce an excessive sentence. For a Range I standard offender convicted of flagrant

9

nonsupport, a Class E felony, the sentencing range is one to two years.  See Tenn. Code Ann. § 39-15-101(e); Tenn. Code Ann. § 40-35-112(a)(5) (1990).  This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  Here, the presumption applies.

Upon our *de novo* review, we consider the evidence heard at trial and at sentencing, the presentence report, the argument of counsel, the nature and characteristics of the offense, any mitigating and enhancement factors, the defendant's statements, and the defendant's potential for rehabilitation.  Tenn. Code Ann. § 40-35-102, -103(5), -210(b) (1990).  The burden is on the appellant to show that the sentence imposed was improper.  Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The record reflects that the appellant is fifty-six years old. The appellant currently resides in Shelby, North Carolina, where he rents a basement apartment. He has been receiving psychiatric treatment since October of 1986 until the present for depression and, since his car accident, has applied for disability from those injuries which has not been granted.  The appellant remained employed for the duration of his marriage; however, since the divorce he has had difficulty in maintaining employment for any duration.  The record indicates that he has had three to four employers since he moved from the state of Tennessee, the last being the Developmental Evaluation Center of Shelby, North Carolina.  Currently, the presentence report reflects that the appellant is unemployed.  The appellant has no prior criminal record.

**A.  Length of Sentence**

10

The trial court applied the following enhancement factors when determining the appropriate sentence for the appellant's conviction of flagrant nonsupport: (1) "[t]he offense involved more than one (1) victim," see Tenn. Code Ann. § 40-35-114(3); and (2) "[t]he personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great," see Tenn. Code Ann. § 40-35-114(6). With regard to mitigating factors, the trial court applied, "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury," see Tenn. Code Ann. § 40-35-113(1). Thereafter, the trial court imposed the maximum sentence of two years at a 30% release eligibility date.

The appellant argues that the trial court misapplied both enhancement factors. With regard to Tenn. Code Ann. § 40-35-114(3), the trial court noted, "there are several people that were victims of this crime, more than one, . . . because there were two children" ages seven and fifteen. We agree with the trial court's application of this factor. In reference to Tenn. Code Ann. § 40-35-114(6), the court noted, "this happened over a period of several years and accumulated to a rather astronomical amount in child support that was due without any payment during that period of time. . . The amount of damage to the victim was particularly great financially." Again, we agree with the trial court's application of this enhancement factor.

Next, the appellant contends that the trial court erred by not applying Tenn. Code Ann. § 40-35-113(3) in that, "substantial grounds exist[ed] tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." He also argues that the court should have considered the appellant's lack of criminal history and his physical and mental condition as mitigating factors. The trial court denied application of Tenn. Code Ann. § 40-35-113(3) because "during the period of time when there was employment and wages being earned we find the defendant was negotiating but not paying, and that he could have been paying . . . ." We

11

conclude that the trial court was correct in not applying this mitigating factor.

In summary, we conclude that one mitigating factor and two enhancement factors are present. When there are both enhancement and mitigating factors present, the sentencing court must start at the minimum sentence in the Range, enhance the sentence within the Range as appropriate for the enhancement factors, and then reduce the sentence within the Range, as appropriate, for the mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1990 Repl.). Upon *de novo* review, we conclude that the maximum sentence of two years is justified.[3]

## CONCLUSION

Based upon the foregoing, the judgment of conviction and sentence entered by the trial court is affirmed.

_____
DAVID G. HAYES, Judge

---

[3]The record indicates that the appellant was released from custody following the execution of only an appearance bond. Tenn. Code Ann. § 39-15-103(b) provides that no appeal shall operate as a stay of execution unless the person receives the court's permission, gives the security provided in § 39-15-102(b)(2) and, when necessary, executes an appearance bond. Thus, in the event that the appellant seeks application for permission to appeal to the supreme court, pursuant to Rule 11, Tenn. R. App. P., the above provisions are to be followed.

CONCUR:


_____
JERRY L. SMITH, Judge


_____
JAMES CURWOOD WITT, JR., Judge

13