STATE of Tennessee, Appellee,

v.

Jimmy STORY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 5, 1980.

Permission to Appeal Denied by Supreme Court Nov. 3, 1980.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, Daniel W. Cook, Asst. Dist. Atty. Gen., Ashland City, J. Kenneth Atkins, Asst. Dist. Atty. Gen., Charlotte, for appellee.

Allen W. Wallace, Anthony L. Sanders, Waverly, for appellant.

## OPINION

WALKER, Presiding Judge.

Convicted of first degree murder and sentenced to life imprisonment, the appellant, Jimmy Story, appeals to this court, first challenging the sufficiency of the evidence to support the verdict. Specifically, he contends that the proof showed that he acted in self–defense and also that there was no proof of premeditation.

In the early evening of June 10, 1978, the appellant, age 22, and Walker Bryan Reece, age 61, drove from Waverly in Reece's brown Mustang automobile on a country road to a place where the appellant shot Reece three or more times with a .25 automatic pistol and cut him with a knife four times on the neck. Although the knife wounds were sufficient to cause death, the immediate cause of death was a pistol wound to the aorta.

After shooting and stabbing Reece, the appellant dragged him into the woods but then dragged him back to the car and put him into the trunk. The appellant also took Reece's wrist watch and his wallet containing $31. With Reece's body in the trunk, the appellant drove the automobile to a service station at Interstate 40 and Highway 13 and then to Huntingdon where he was unsuccessful in finding his estranged wife. Blood was dripping from the trunk at that location. The appellant then returned to Waverly and abandoned the vehicle about one quarter of a mile from the apartment where he lived with his parents.

In the meantime, Reece's wife had reported him missing and officers found his car with the body in the trunk.

In his testimony the appellant said that on this occasion he and Reece went riding in Reece's car and that Reece parked in a remote area. He said that Reece suggested

that they masturbate each other and that when he refused Reece attacked him with a knife, cutting his left hand; that the appellant then shot Reece once or twice with his .25 caliber automatic; that Reece continued the attack and the appellant fired his pistol until it was empty; that Reece fell to the ground but was still trying to continue the attack with his knife when the appellant stepped on his hand and took the knife away from him and then struck the blows to his neck.

The appellant said that he dragged the body into the woods but then felt he had killed Reece in self–defense and put the body in the trunk. He then drove to the service station in search of his brother and later to Huntingdon in search of his wife. His purpose was to get their aid in turning himself in. He further testified that he threw his bloody clothing in the Tennessee River as he returned from Huntingdon. He said that he abandoned the vehicle and went home to wait for officers to come.

Story said that Reece's wrist watch came off and his wallet fell out of his trousers when his body was dragged through the woods. Story also stated that he did not look in the wallet and threw it and the watch away.

Story did not turn himself in as he testified that he planned but was taken into custody near midnight at his apartment. At that time he acted as if he knew nothing of the killing.

Story was approximately 5′ 11″ in height and weighed 165 pounds; Reece was about 5′ 8″ in height and weighed 138 pounds. Reece had had three heart attacks and was receiving disability benefits. Several witnesses testified that Reece had shown no homosexual tendencies.

█ The question of self–defense is for the jury. *Henley v. State*, 520 S.W.2d 361 (Tenn.Cr.App.1974). By its verdict the jury rejected the appellant's version of the events and his theory of self–defense. See *May v. State*, 220 Tenn. 541, 420 S.W.2d 647 (1967); *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327 (1962).

█ Likewise, premeditation is a question of fact to be determined by the jury from all the circumstances of the case. A circumstance from which an inference of premeditation may be drawn is repeated shots or blows inflicted upon the victim. *Houston v. State*, 593 S.W.2d 267 (Tenn. 1979). We find sufficient evidence to justify a rational trier of fact in finding appellant's guilt of first degree murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Next, the appellant contends that the testimony of several witnesses, who were discovered as a result of his illegally obtained statements, should have been suppressed. He says his statements were illegally obtained because he was illegally arrested and because he was denied access to a lawyer in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, he urges, the testimony of any witness whose identity was discovered by virtue of his statements should have been excluded as fruit of the poisonous tree.

At trial, the witnesses in question testified in the state's case in chief. All placed the appellant as driving Reece's car alone on the evening of June 10. One testified that the appellant had a large blood stain on his shirt; another that he saw a red substance leaking from the trunk of Reece's car (this was later shown to be blood.) Several witnesses testified that the car was covered with mud and leaves.

█ In his own testimony, the appellant admitted the substance of the testimony of these witnesses. They did not purport to know anything about the facts of the killing or whether the appellant killed in self–defense. When a defendant takes the stand and admits the substance of the testimony of witnesses, he cannot complain that their testimony is prejudicial. Compare *Braziel v. State*, 529 S.W.2d 501 (Tenn.Cr.App. 1975).

Although we think the appellant was not prejudiced by this testimony and cannot complain, we have nevertheless examined

his contentions and authorities and find this issue to be meritless in any event.

On June 11, at 12:14 a. m., the appellant was "picked up" without a warrant at his apartment and taken to the city hall for questioning because he was seen sitting on the courthouse steps with Mr. Reece on the afternoon of June 10 and because the body was found within a quarter of a mile of appellant's apartment.

The trial judge held the appellant's confession inadmissible because he had been denied his request for a lawyer, but the trial judge found the confession otherwise voluntary. Relying on *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), he allowed the testimony of the witnesses whose names were discovered from the appellant's statements because he found no coercion in the interrogation process. The trial judge further found that the appellant was properly held in custody. We disagree on the legality of the arrest.

■■■ We think that the warrantless arrest was without probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 442 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Childs v. State*, 584 S.W.2d 783 (Tenn.1979). For this reason, as well as the *Miranda* violation, the statements were properly excluded from evidence.

■■ This issue presents the question of whether the testimony of witnesses whose identities are discovered by a defendant's illegally obtained and inadmissible statement should likewise be held inadmissible.

Under *Michigan v. Tucker*, supra, third party testimony discovered as a result of a *Miranda* violation, need not necessarily be suppressed. *People v. Kusowski*, 403 Mich. 653, 272 N.W.2d 503 (1978). The failure to furnish an attorney here did not require the suppression of third party testimony.

The illegal arrest likewise did not require the suppression of the testimony of these witnesses. In *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), an illegal search of Ceccolini's business house resulted in the discovery of a witness. Although the items seized were excluded, the witnesses whose identity was discovered was permitted to testify. Citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court stated that the ultimate test in determining the admissibility of the testimony of a witness whose identity was discovered by an illegal search is whether "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'"

Applying the attenuation analysis of *United States v. Ceccolini*, supra, and the policy considerations discussed in *Michigan v. Tucker*, supra, we find that the degree of attenuation here was sufficient. to dissipate the connection between the illegal arrest, the *Miranda* violation, and the testimony of the witnesses. The challenged witnesses were ordinary citizens whose testimony was in no way coerced or induced by governmental action. They were not initially questioned at the same time and place that the appellant made his statements, and the trial was conducted a full year after the violation. The witnesses would probably have been discovered anyway. Because the witnesses were properly permitted to testify as well as the similar testimony of the appellant already discussed, the issue is without merit.

The appellant next contends that the court erred in failing to instruct the jury on assault with intent to commit murder. He argues that the jury could have found that his act in shooting the deceased was justified by reason of self–defense, but that his subsequent stabbing of the victim was merely an assault with intent to commit murder. He premises his contention on the testimony of a pathologist that the wounds on the victim's neck were sufficient to have caused death, but that the multiple gunshot wounds were more severe and were the immediate cause of death.

■■■ When there is no evidence to support a lesser included offense so that the accused can be guilty only of the greater

offense or no offense at all, the trial judge is not required to instruct on a lesser included offense. *Crumsey v. State*, 3 Tenn.Cr. App. 285, 460 S.W.2d 858 (1970); *Jones v. State*, 580 S.W.2d 329 (Tenn.Cr.App.1978). The facts of this case did not require an instruction on felonious assault and this issue is without merit.

■■■■ Finally, the appellant says that the court erred in refusing his special request on the state's burden in proving the cause of death. The trial judge instructed the jury in conformity with T.P.I.Crim. 37.-11. Where the trial judge's instructions on a matter are proper, his denial of a special request is not error. *Shell v. State*, 584 S.W.2d 231 (Tenn.Cr.App.1979). The instructions fully covered this question.

Affirmed.

O'BRIEN and CORNELIUS, JJ., concur.