**STATE of Tennessee, Appellee,**

v.

**Jesse Andrew WILLIAMS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 1, 1989.

Permission to Appeal Denied by Supreme Court Feb. 5, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Don Allen, Asst. Dist. Atty. Gen., for appellee.

Mike Mosier, Henderson, for appellant.

## OPINION

BIRCH, Judge.

The defendant, Jesse Andrew Williams, was convicted by jury of first-degree murder.[1] He is serving a sentence of life imprisonment.

Williams appeals, insisting first that the evidence is legally insufficient to establish his guilt of first-degree murder, and additionally, that:

1) The trial court erred in accepting[2] him for indictment and trial as an adult;

2) The trial court erred in the admission of certain evidence from his unlawfully obtained confession;

3) The trial court erred in the admission of evidence showing that he had stolen the murder weapon; and

4) The trial court erroneously allowed the prosecutor to ask leading questions, to make improper statements, and to "editorialize" on the testimony.

We have carefully examined the entire record and considered each of the defen-dant's issues. The defendant has failed to demonstrate the asserted insufficiency of the evidence, and we have found no reversible error. Accordingly, we affirm.

### I

The defendant first attacks the legal sufficiency of the convicting evidence.

The facts adduced at trial show that shortly before turning eighteen, the defendant lured a classmate, Shawn Reed, to a deserted rural site. There, he shot Reed between the eyes from a distance of less than two feet, put the body in the trunk of Reed's car, drove to a neighboring county, and hid the body. He then drove Reed's car to a friend's home.

Later, fearing that the body would be too easily discoverable, he returned to the place where he had left it. Still using the victim's car, the defendant transported the body to a different site, where he dumped it into a ditch. He then set the car afire "to burn off fingerprints."

Prior to the killing, the defendant told several of his friends that he intended to kill Reed. Reed and Williams were together shortly before Reed disappeared, and following the killing, the defendant told several persons that he had "wasted" Reed, and described Reed's death in graphic detail. Suspicious of Williams, Reed's friends and relatives repeatedly inquired of Williams about Reed's whereabouts. Williams parried these questions by claiming to have no knowledge.

The defendant attempted to establish an alibi by asking a friend to make a false statement. The friend refused.

The defendant testified in his own behalf, implicating himself further. He also detailed his drug addiction.

Throughout his testimony, he said that he feared the victim, and that he felt that Reed would eventually kill him. He denied, however, having premeditated. Rather, he stated, he killed the victim in his own defense.

---

**1.** Tenn.Code Ann. § 39–2–202(a) (premeditated).

**2.** Tenn.Code Ann. § 37–1–134(a)(1).

■ The claim of self-defense offered by the defendant evanesces when set against the overwhelming proof of willful, deliberate, and premeditated murder. In any event, the question of self-defense is one for the jury to determine. *State v. Byerley*, 658 S.W.2d 134 (Tenn.Crim.App.1983); *Hawkins v. State*, 527 S.W.2d 157 (Tenn. Crim.App.1975).

■ The jurors are the sole and only judges of the evidence, and of the weight to be given the swearing of each and every witness in the case. *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). The credibility of the witnesses, the weight and value of their testimony, the inferences to be drawn from their statements and all factual issues raised by the testimony and evidence introduced—direct and circumstantial—are matters entrusted exclusively to them as the triers of the facts. *Braziel v. STate*, 529 S.W.2d 501, 505 (Tenn.Crim. App.1975).

■ The jury was entitled to accept that part of the defendant's proof they felt was consistent with truth and reject that portion they believed originated in falsity. *Batey v. State*, 527 S.W.2d 148 (Tenn.Crim. App.1975). Certainly, this record fully justified the jury in finding the defendant guilty of first-degree murder and amply supports that verdict.

■ The jury accredited the testimony of the state's witnesses and resolved all conflicts in the testimony in favor of the state. *State v. Hatchett*, 560 S.W.2d 627 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence, together with all the reasonable and legitimate inferences which can be drawn from it. *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978).

■ The evidence in this case is overwhelming to show the defendant's guilt of first-degree murder (premeditated) beyond a reasonable doubt, and clearly measures up to the required tests of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Tennessee Rule of Appellate Procedure 13(e).

## II

In his second issue, the defendant contends that the trial court erroneously accepted his transfer from juvenile court for indictment and trial as an adult. Tennessee Code Annotated § 37-1-134(a)(1) provides for the transfer of juveniles to the criminal court for indictment and trial if the child is more than sixteen years of age.

■ In order for the trial court to accept the child, the court must also find that there are reasonable grounds to believe that:

1) The child committed the delinquent act as alleged;[3]

2) The child is not committable to an institution for the mentally ill;[4] and

3) The interest of the community requires that the child be put under legal restraint or discipline.[5]

■ The defendant's contest of his transfer from Juvenile Court is based on his premise that there is insufficient proof "that the interest of the community requires that [he] be put under legal restraint or discipline" to support the trial judge's finding.

To support this, the defendant relies upon several items of proof: namely, testimony that he has no record of prior offenses and no prior history of violence; that he has a treatable drug problem; and that he should be retained and treated within the juvenile system.

This testimony, when weighed with other mandated considerations and the entire proof, does not preponderate against the trial judge's decision to accept the defendant for treatment as an adult.

This issue has no merit.

## III

■ The defendant's next issue concerns the trial judge's admission of evidence re-

---

3. Tenn.Code Ann. § 37-1-134(a)(4)(A).

4. Tenn.Code Ann. § 37-1-134(a)(4)(B).

5. Tenn.Code Ann. § 37-1-134(a)(4)(C).

lating to the discovery of Shawn Reed's remains. As part of his confession, the defendant led investigators to the place where he had left the body. Following indictment, the trial court suppressed the confession. The defendant contends that this evidence is fruit of the poisonous tree and should have been excluded.[6]

The state concedes, as it must, that this evidence came from a poisoned source, but nonetheless maintains that the evidence is admissible because it would have been inevitably discovered.[7]

The record indicates that the defendant led the investigators to the victim's body, which was lying face down on the edge of a three foot ditch near a field road. This road was used regularly by the landowner, and situated approximately 400 yards from the landowner's house.

The body had not been buried, although it was partially covered with sticks, leaves, and sand. It emitted an odor, signalling the onset of decomposition despite the cold mid-December weather.

The farmer who owned the property testified that he passed the site five or six times per week. He also said that he would have discovered the body had the authorities not found it first. Testifying for the defendant, a police lieutenant admitted having previously opined that but for the defendant's help, the body might not have been found for a hundred years.

Based upon this evidence, the trial judge ruled that the body would have inevitably been discovered by lawful means and admitted the evidence as an exception to the exclusionary rule.

We find that the state has shown by a preponderance of the evidence that the victim's body would have inevitably been dis-

covered. The trial judge's ruling admitting this evidence was correct. *See State v. Coury,* 657 S.W.2d 777 (Tenn.Crim.App. 1983); *State v. Story,* 608 S.W.2d 599 (Tenn.Crim.App.1980).

In the same vein, the defendant contends that the fruit of the poisonous tree should be applied to exclude the testimony of two witnesses whose connection to the case was discovered as a result of the same unlawfully obtained confession.

■ As respects witnesses, if their connection to the evidence is discovered by reason of an independent source,[8] or if the connection between the primary taint and the witness is so attenuated as to dissipate the taint,[9] the primary taint is purged and the evidence is admitted because it is sufficiently distinguishable from the primary illegality.[10]

■ This question was not specifically addressed by pretrial motion, but witnesses Stiffler and Cox testified at trial about the defendant's conduct and statements shortly after the killing. The defendant contends that these witnesses were identified as a result of information contained in his suppressed confession. Therefore, he says that their testimony is fruit of the poisonous tree and should have been excluded.

First, we note that neither Stiffler nor Cox is named or referred to in either the defendant's written confession or his videotaped statement. The written confession does, however, identify one Jerry Glen Newman, Jr. as a person to whom the defendant confided that he had killed Reed. In his statement to the police, Newman stated that Stiffler and Cox were witnesses also.

---

6. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

7. *See Nix v. Williams,* 467 U.S. 431, 443, n. 4, 104 S.Ct. 2501, 2509, n. 4, 81 L.Ed.2d 377 (1984) ("The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct"); *Silverthorne Lumber Co.,* 251 U.S. at 392, 40 S.Ct. at 182.

8. *See Nix v. Williams,* 467 U.S. at 443, 104 S.Ct. at 2508 (the independent source rule).

9. *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939); *see also State v. Story,* 608 S.W.2d 599 (Tenn.Crim.App. 1980).

10. *Wong Sun v. United States,* 371 U.S. 471, 487–8, 83 S.Ct. 407, 417–8, 9 L.Ed.2d 441 (1963) (footnotes added).

The proof shows that Newman contacted police as soon as he learned that Reed was missing, and before the defendant confessed. Newman went to the police before they came looking for him. Thus, it was the information that Newman gave to the police that led to Stiffler and Cox as material witnesses, not the defendant's confession.

Considering the circumstances of the case, we find that the connection between the illegal confession and the testimony of Stiffler and Cox is so weak as to dissipate the taint of the primary illegality. *State v. Story*, 608 S.W.2d 599 (Tenn.Crim.App. 1980). As such, the testimony of Stiffler and Cox was properly received into evidence.

### IV

 The defendant, for another issue, contends that the trial judge erroneously permitted the state to prove that the murder weapon had been stolen.

The issue developed as follows during cross-examination of the defendant:

Q: Where did you get the gun?

MR. MOSIER: Judge, I'm going to object to that question.

THE COURT: On what grounds?

MR. MOSIER: Well Judge, I guess we need to have a side bar here.

THE COURT: Okay.

(There was a conference at the bench out of the hearing of the jury as follows:)

MR. MOSIER: I object simply because, Your Honor, the gun was the product of a theft, and the probative value of that is far outweighed by the prejudicial effect. The only way that they knew that was by his confession also.

MR. MOORE: But we can impeach him by that. We're not going to, but there's no reason we can't ask questions.

THE COURT: You can ask the question. Objection overruled.

MR. MOSIER: Judge, that is going to involve another offense for which he's not on trial and for which he hasn't been charged or convicted.

THE COURT: He stole the gun?

MR. MOSIER: Yes, sir.

MR. MOORE: I think it would be proper for Your Honor to instruct the jury that he is not charged with that offense and he is not on trial for that.

THE COURT: I'm going to let him ask the question. I'll instruct the jury.

(End of conference at the bench.)

Q: Where did you get the pistol?

A: It was a stolen pistol.

THE COURT: All right, ladies and gentlemen of the jury. He is not on trial now for stealing a gun. This is just for probative—insofar as this case to show the character he has.

The defendant's objections to this evidence are:

1. Since the defendant told the police in his suppressed confession that he had stolen the gun, this admission should have been suppressed as fruit of the poisonous tree; and

2. As a prior bad act introduced for impeachment purposes, the defendant was entitled to have the trial judge weigh the probative value of this evidence against its prejudicial effect.

The defendant is correct, at least on the first count. The evidence should have been excluded as fruit of the poisonous tree. However, the totality of the incriminating evidence, bolstered as it was by the defendant's own testimony of the graphic details of Reed's death, leaves little upon which to speculate. In view of this massive array of incriminating evidence, the fact that the defendant stole the murder weapon is but a drop in an already overflowing bucket.

If it was error at all, it was harmless. Tenn.R.Crim.P. 52; Tennessee Rules of Appellate Procedure, Rule 36(b).

### V

██ For his final issue, the defendant insists that by asking leading questions, making argumentative statements, and "editorializing" on the testimony, the prosecutor engaged in misconduct so prejudicial that it deprived the defendant of a fair trial.

The defendant has included in his brief twelve excerpts from the trial testimony which he holds up as examples of this contention. We see no need to reproduce all of them, as two of the most illustrative will do:

"MR. WOODALL: The car is obviously facing that way (indicating). Show us how you would be turned if you were shot by the passenger in the front seat.

WITNESS: Okay, he's over there (indicating), right? I'm in the back seat behind the driver?

MR. WOODALL: No, you're in the front seat behind the wheel.

WITNESS: Oh, I'm driving.

MR. WOODALL: You're driving.

WITNESS: Okay.

MR. WOODALL: You're getting ready to get murdered.

MR. MOSIER: Judge, I'm going to object to that. That's—

THE COURT: Well, disregard that. Just ask him what the position was when he was shot.

MR. MOSIER: Ask for a mistrial, Your Honor.

THE COURT: Sustain the objection, and disregard that remark from the District Attorney." (T.II—152–153); and

"MR. WOODALL: Mr. Cromwell even said he'd smoke marijuana with you and he knew what you looked like when you had been smoking marijuana.

MR. MOSIER: Judge, I'm going to object to that. That's not a question.

MR. WOODALL: If you'd let me finish.

THE COURT: Let him finish. Go ahead.

MR. MOSIER: Well judge, I object to Mr. Woodall editorializing.

THE COURT: Well overruled as far as this is concerned. Go ahead, General.

MR. WOODALL: Thank you, Your Honor." (T.II—264).

We think the defendant exaggerates a bit, for the above examples, as well as the others defendant says are objectionable, are simply typical of the "give and take" that occurs in any trial where emotions are high and the penalty severe.

This final issue is also without merit. Therefore, we affirm the judgment below in all respects.

DWYER and BYERS, JJ., concur.