IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

April 28, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9603-CR-00092 |
| | ) | |
| Appellee | ) | KNOX CRIMINAL |
| | ) | |
| v. | ) | HON. RICHARD BAUMGARTNER, |
| | ) | JUDGE |
| THOMAS J. McKEE, | ) | |
| | ) | First Degree Murder |
| Defendant/Appellant | ) | |

FOR THE APPELLANT

Mark E. Stephens
Sixth District Public Defender

R. Scott Carpenter
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

FOR THE APPELLEE

Charles W. Burson
Attorney General & Reporter

Robin L. Harris
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

OPINION FILED _____

AFFIRMED

JOHN K. BYERS
SENIOR JUDGE

## O P I N I O N

The defendant was convicted of murder in the first degree and sentenced to serve life imprisonment with the possibility of parole.

The defendant raised the following issues on appeal:

"I.     The evidence presented during trial was insufficient to support finding of guilt beyond a reasonable doubt.

II.     The State's closing argument was prosecutorial misconduct which affected the verdict to the prejudice of the appellant.

III.     The trial court erred in its charge to the jury.

IV.     The introduction of the skull of the deceased resulted in unfair prejudice and reversible error.

V.     The testimony of Randy Bryant and Laura Baird as elicited by the State constituted prejudice in violation of the trial court's order."


## FACTS

The defendant, Thomas J. McKee, and the victim, Marilyn Kaye McKee, became husband and wife on September 21, 1990.  However, they eventually became estranged.  On July 31, 1994, an officer of the Lenoir City Police Department responded to a call at the defendant's house.  During the investigation, the victim was placed in one patrol car and the defendant was placed in another patrol car pursuant to arrest.  As the defendant walked past the car in which the victim was sitting, he said to her "I'll get you for this, bitch . . . I'll kill you."  The defendant continued to make threats that he would get even with her and that he would kill her.

During her estrangement from the defendant, the victim lived with Laura Baird.  In August, 1994, Baird was with the victim at the Loudon County courthouse and overheard the defendant begging the victim to come back to him.  When the victim refused and began to leave, the defendant yelled at her "You've done it now, bitch, I'll kill you."

According to Donnie Arden, a family friend of the McKee's, the defendant's wife was playing a "mind game" with her husband, repeatedly calling and telling him that she loved him, then calling back and telling him that she hated him. Arden heard some of these messages on the defendant's answering machine.

As previously mentioned, after the defendant and the victim became estranged, the victim lived with Laura Baird. Baird would not allow the defendant to come to her home or call the victim there. Brenda Bowers, a friend of both the defendant and the victim, assisted the two in communication with each other. The victim would call Bowers, then Bowers would page the defendant, and then the defendant would call Bowers and give her the phone number (usually a pay phone) where he could be reached. Bowers would give the victim this number, and the victim would call the defendant.

At about l0:30 a.m. on September 21, 1994, the defendant was at work when he received a message on his beeper. He left work and went to the nearest phone, returning twenty to thirty minutes later. He told co-workers that he had talked to his estranged wife on the phone, that he was going to meet with her, and that there was a chance they might reconcile. He picked up his carpenter's tools, put them in his car, and left work, saying that he would meet with her even if it cost him his job.

September 21st was the couple's wedding anniversary. Motel records revealed that on that day the defendant, accompanied by another person, rented and occupied a room at the Clark Motel in north Knoxville.

At 2:12 p.m. that day, Knox County Sheriff's deputies were called to Brushy Valley Road, a country road next to a field bordered by a barbed-wire fence, where the victim was found lying dead. She had sustained multiple blows to her head and numerous scratches that appeared to have been caused by the barbed wire.

A witness had seen a red sporty car speeding away from the area shortly before the body was found. There is no evidence that the killing occurred in the car or in the motel.

At 2:30 p.m. that afternoon, while investigators were still at the crime scene, Arden saw and talked with the defendant at his father's home. The defendant, who had a beard, was shaving. The defendant said "he had fucked up, fucked up big

time." When Arden asked him to explain, the defendant said he had killed Marilyn. When Arden asked if he was sure she was dead, the defendant said "yes, she ought to be." Arden testified that the defendant said his wife had called him that morning and they had agreed to meet. The defendant also said they had gone to a motel and made love. Later that afternoon, the defendant had asked his wife to move back in with him and she had refused. The defendant said she told him that she was living with another man and "that's when it [the killing] happened." Arden testified that the defendant said the victim had told him she loved him as they drove to the motel.

The defendant had asked Arden to take the license plate off his red Camaro and hide the car, which Arden did. But when the defendant asked Arden to provide him with an alibi for the time of the killing, Arden refused and told him to turn himself in. The defendant answered that he needed to talk to a lawyer.

The defendant's red Camaro was found where Arden had put it. An unsigned anniversary card, which read "For My Wonderful Wife . . .," was found inside the car, and the defendant's carpentry tools were found in the back seat. The victim's car was found at Powell Shopping Center with non-perishable groceries in the trunk along with a cash register receipt which indicated she had purchased the groceries at Food City at 11:48 a.m. on the day of her death.

The day after the victim was killed, the defendant's attorney brought him to the Knox County Sheriff's Office. The defendant had several scratches on his arms that resembled the scratches on the victim's body.

Autopsy revealed that the victim's death was caused by at least twelve blows of massive force to the head and neck. In order to determine the type of instrument used, the medical examiner decapitated the body of the victim and sent the head to the University of Tennessee for cleaning and examination. Through this procedure, it was determined that death was caused by a circular blunt instrument, most likely a hammer. There were numerous fractures of the skull, a fracture on the facial area, and one blow which fractured three vertebrae in the victim's neck. A small metal fragment was found in the victim's brain. There was extensive bruising and swelling

of the hands, most likely caused by the victim's attempt to defend herself from the blows.

We will address the sufficiency of the evidence issue last.

## STATE'S OPENING AND CLOSING ARGUMENTS

### First Complaint - State's Opening Argument

The defendant says the State erroneously and prejudicially argued to the jury in two aspects. First, the defendant says the District Attorney General in opening argument to the jury attempted to anticipate that the defendant would argue the victim invited the attack upon her. The defendant objected to the argument and the trial court overruled the objection. We see no error.

It is not improper for the State to say what it thinks the accused will argue to the jury, so long as the statements are not so far removed from the evidence in the case as to make such arguments patently improper or inflammatory.

We conclude that the State's argument in this regard is not improper.

### Second Complaint - State's Closing Argument

The defendant asserts also that the State erroneously argued that the actions of the defendant of shaving, concealing his car, and asking a friend to supply an alibi after the killing were evidence of a premeditated and deliberate killing.

The argument of the District Attorney General was an improper assertion of how these facts could be weighed by the jury. Concealment of evidence is not sufficient to show a premeditated or deliberated killing. *State v. West,* 844 S.W.2d 144 (Tenn. 1992).

However, the defendant may not obtain a new trial upon this basis. The defendant did not make a contemporaneous objection to this argument as required for relief. Tenn. R. App. P. 36(a). The defendant did not object until after the State had closed its argument.

Further, the trial judge upon request of the defendant instructed the jury that the actions of the defendant after the killing were not evidence of the defendant's intent or state of mind at the time of the killing.

The State relies upon the case of *State v. William Singleton, Jr.,* No. 03C01-9406-CR-00221, Claiborne County (Tenn. Crim. App. Mar. 13, 1995), to say the actions of the defendant were sufficient to show premeditation and deliberation. The major issue in *Singleton* appears to be the concealment of the body. Although the court in *Singleton* recognized the general rule, as stated in *State v. Brown,* 836 S.W.2d 530 (Tenn. 1992), that such acts are not sufficient to establish first degree murder, the court said "in this case" the jury could consider the concealment of the body on the issue of whether the killing was first degree murder. However, the body of the victim was not concealed in this case. We must assume therefore that the holding in *Singleton* is limited to the particular act of concealing a body and thus is not a general attempt by the court to overturn the general rule established by the Supreme Court in *Brown.*

We conclude the State's argument as set out in the defendant's second complaint was improper, but both the failure of the defendant to enter a contemporaneous objection to the argument and the instruction of the trial court on the law applicable to the argued facts diffused any taint created by such argument.

The State could have argued the acts of concealment to show the defendant was the person who killed the victim. However, in this case, there was no claim by the defendant that he did not kill the victim.

## THE INSTRUCTION TO THE JURY

### Premeditation and Deliberation

The defendant contends the trial court failed to distinguish between the elements of premeditation and deliberation in the instructions given to the jury. The record does not support this claim.

The record shows the trial judge connected the elements of premeditation and deliberation one time in the instruction. The coupling in that instance was not erroneous. The trial judge was explaining how excitement applies in assessing the elements of premeditation and deliberation. We see no error in this connection.

The record shows the trial judge clearly and properly instructed the injury on the difference between premeditation and deliberation as required. *State v. Brooks,* 880 S.W.2d 390 (Tenn. Crim. App. 1993).

We need not address the State's unpersuasive argument that any error in the instruction was harmless error.

The defendant asked the trial judge to charge the jury by several requests. The requests numbered 4, 5, and 6, which were rejected by the trial judge, dealt with various definitions of what constituted voluntary manslaughter. The trial judge allowed the defendant to argue the facts which he claimed made the instructions valid. The trial judge properly charged the jury on voluntary manslaughter. Further, the requests submitted by the defendant border closely upon a comment on the evidence.

The defendant also complains that the trial judge did not properly charge the jury on how they were to weigh the concealment of evidence as it relates to premeditation and deliberation. The record shows the trial judge gave a full instruction to the jury in this regard. When the trial judge has given a correct and sufficient instruction to the jury, the refusal to give requested instructions is not error. *State v. Story,* 608 S.W.2d 599 (Tenn. Crim. App. 1980). We find no error in the instruction given by the trial judge on the matter raised by the defendant's requests numbered 4, 5, and 6, and we reject the defendant's claim as to the refusal of the trial judge to give the instruction.

The defendant also argues the trial judge was in error for not instructing, at his request, the jury that a homicide when shown is presumed to be murder in the second degree.

The defendant was attempting to convince the jury that he was guilty of manslaughter. The State was attempting to convince the jury that the defendant had committed first degree murder. The State has the burden of proving the defendant committed the offense and the degree of the offense, i.e. murder in the first degree, murder in the second degree, or voluntary manslaughter. If the defendant's requested instruction had been given, the burden of proof would have

been as follows. The burden would be on the State to elevate the offense from second degree murder to first degree murder. And, the defendant would have the burden of reducing the crime to voluntary manslaughter.

The instruction sought by the defendant, though the rule in days gone by, fell to the holding of the United States Supreme Court in *Sandstrom v. Montana,* 442 U.S. 510 (1979), that any instruction which shifts the burden from the State to the defendant to show an element of the offense is constitutionally impermissible. In *State v. Bolin,* 678 S.W.2d 42 (Tenn. 1984), our Supreme Court espoused the same rule.

We find the trial judge correctly refused to give the instruction.

## INTRODUCTION OF THE SKULL

The defendant contends the introduction of the victim's skull to show the injuries sustained was error because its prejudicial effect outweighed its probative value, because it was an inaccurate depiction of the injuries suffered by the victim, and because it was unnecessary to introduce the skull into evidence.

The introduction of the skull into evidence is not unique to this trial. Such evidence has been allowed before in this State and in other jurisdictions.

In *State v. Morris,* 641 S.W.2d 883 (Tenn. 1982), the Supreme Court approved the use of a skull to show the nature and type of injuries sustained by the victim. In *State v. Cazes,* 875 S.W.2d 253 (Tenn. 1994), the Supreme Court held the introduction of the skull was proper as it aided in identifying the weapon used in the murder. Further, it appears in *Cazes* that the introduction of the skull is relevant to identify the accused as the perpetrator of the crime.

In *State v. King,* 718 S.W.2d 241 (Tenn. 1986), and in *State v. Sexton,* 724 S.W.2d 371 (Tenn. Crim. App. 1986), the Supreme Court and the Court of Criminal Appeals held such evidence was admissible to show premeditation and deliberation. We believe the validity of these views is brought into question by the decision in *State v. Brown,* which expresses the view that repeated blows are not sufficient by themselves to show first degree murder because repeated blows may be delivered

-8-

in the heat of passion with no design or reflection. 836 S.W.2d 530 (Tenn. 1992). It appears therefore that there must be something more than an attempt to show first degree murder apparent to justify the introduction of the skull. In this case, however, we find the introduction of the skull was relevant to show the nature of the injuries inflicted upon the victim and thus relevant to show the defendant's intent at the time he inflicted the blows.

We are further satisfied the trial judge properly allowed the skull to be introduced because the forensic expert testified she would have difficulty in showing the extent of the injuries from pictures or diagrams. We also note that the trial judge did not allow the skull to be passed to the jury.

We conclude, therefore, that the trial court properly allowed the skull to be introduced under the rule which excludes evidence if its prejudicial value far outweighs its probative value. *State v. Banks,* 564 S.W.2d 947 (Tenn. 1978). In this case, the prejudicial value of the introduction of the victim's skull did not outweigh it probative value.

The defendant further contends the skull was an inaccurate depiction of the victim's injuries because a piece of bone was missing from the cheek area from where the victim had apparently sustained a previous injury. This was explained by the forensic expert out of the presence of the jury. There is nothing to show the jury saw the place where the bone was missing nor was there any showing they were influenced by this. We see no basis for excluding the skull by reason of this.

The defendant further says the trial judge should not have allowed the use of the skull because he had filed a timely request for Notice of Intention to Use Evidence pursuant to Rule 12(d)(2) some days prior to trial and yet was not notified of the State's intent to use the skull until the first day of the trial.

It appears from this record that the District Attorney General and the defendant's attorney learned at approximately the same time that the body of the victim had been decapitated and the skull was available for use at the trial. The time of the knowledge of the evidence exonerates the State from any attempt to surprise the defendant at trial. That alone, however, does not answer the question

of whether the late revelation results in prejudice to the accused if the evidence is introduced. This is determined of course by whether, given adequate time, the defendant could reasonably refute the veracity of the evidence offered, explain the evidence in a manner to show it has no relevancy on the issues to be found, or make acceptable stipulations as discussed in *Banks* which would make the introduction of the evidence unnecessary.

The record in this case shows the following: the defendant never denied he caused the victim's death; the deceased received massive blows; the expert witness, Dr. Elken, stated that there were twelve blows suffered by the victim; and the forensic pathologist, who reconstructed the evidence, said the victim received at least seven blows.

The defendant contends now that if he had been given notice of the State's intent to use the skull, a stipulation as to the manner of death could have been entered and thus obviated the need to introduce the skull.

Looking back at this issue as we are able to do, we find that the purpose for which the skull was introduced would not have been nullified by such a stipulation because the probative value of this evidence was greater than its prejudicial effect. Therefore, there would have been no error in admitting the skull even in the face of a stipulation as that suggested by the defendant.

### TESTIMONY OF OFFICER BRYANT AND LAURA BAIRD

The defendant claims that the testimony of Officer Bryant and the testimony of Laura Baird concerning the arrest of the defendant on a previous domestic altercation between the defendant and the victim should have been excluded because it did not qualify for admission under Rules 404, 608, or 609 of the Tennessee Rules of Evidence or in accordance with the use of prior arrests in the decision of this Court in *State v. Bordeis,* 905 S.W.2d 214 (Tenn. Crim. App. 1995).

We find the testimony of Officer Bryant is admissible for two reasons. First, the defendant did not object to the introduction of the testimony when given. In fact, this record does not show any objection. The defendant may not now predicate an

error upon this basis. *State v. Copenry,* 888 S.W.2d 450 (Tenn. Crim. App. 1993)*; Adams v. Manis,* 859 S.W.2d 323 (Tenn. Crim. App. 1993). Second, we think the testimony of Officer Bryant was relevant on an essential issue of the crime charged in this case. The State had the burden of showing premeditation for a conviction in this case. In the course of the arrest, the defendant made statements that he would kill the victim. Proof material to the issues under review is not incompetent because the defendant has committed other crimes. *Lacey v. State,* 506 S.W.2d 809 (Tenn. Crim. App. 1974).

The only testimony Laura Baird gave in this regard was that she was aware of the arrest made by Officer Bryant, about which he had testified. We find no error in this.

## SUFFICIENCY OF THE EVIDENCE

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978).

At the time of the offense in this case, an intentional, premeditated, and deliberate killing of another constituted first degree murder. *See* Tenn. Code. Ann. § 39-13-202(a)(1) (1991). Our criminal code defined a deliberate act as "one performed with a cool purpose" and a premeditated act as "one done after the exercise of reflection and judgment." Tenn. Code. Ann. § 39-13-201(b)(1)(2) (1991). In *State v. Brown,* our Supreme Court stated that deliberation required some period of reflection, without passion or provocation, and concluded that the "deliberation necessary to establish first degree murder cannot be formed in an instant." 836 S.W.2d 530, 539, 543 (Tenn. 1992). Premeditation requires a showing of a

previously formed design or intent to kill. *State v. West,* 844 S.W.2d 144, 147 (Tenn. 1992).

The existence of the separate and distinct elements of premeditation and deliberation is a question of fact to be decided by the jury. *See Brown,* 836 S.W.2d at 541-42. In this respect, the determination of the state of mind necessary to establish the elements of first degree murder may be shown by circumstantial evidence. *Id.* at 541; *State v. Burlison,* 868 S.W.2d 713, 717 (Tenn. Crim. App. 1993). However, a jury may not find an element of the offense if there is not evidence to support the theory of the state. *See West,* 844 S.W.2d at 147.

The evidence in this case shows the defendant and the victim were married on September 21, 1990. Shortly before the death of the victim, they became estranged. On two occasions before the death of his estranged wife, the defendant made statements that he would kill the victim. One of the statements was made at the time the defendant was arrested in the course of a domestic dispute. The other statement was made at the Loudon County courthouse after a hearing involving the defendant and the victim. We are satisfied that the evidence of the statements made by the defendant could support a finding of premeditation in this case.

The record shows that on the date the victim was killed, she, as was customary, initiated a call to make contact with the defendant. The defendant met the victim, and they went to a motel where they were involved in sexual activity. After the defendant and the victim left the motel, the defendant asked the victim to return to him. The victim told the defendant she could not because she had a boyfriend with whom she was living. The evidence shows the victim was living with the boyfriend in the home of Laura Baird. The defendant then killed the victim and drove away.

The question becomes whether the evidence is sufficient to show the defendant deliberated the killing of the victim. We think not.

The jury may draw inferences from the circumstances surrounding a killing to find deliberation. Such inferences must, however, be based upon the evidence in the case which reasonably could lead one to reach a conclusion. As stated in *State*

-12-

*v. West,* 844 S.W.2d 144 (Tenn. 1992), the jury cannot construct a theory based on no evidence at all. We find little evidence in this record for a finding of deliberation.

The State argues that the defendant was aware that the victim was living with another man at the time of the killing. The State bases this upon the testimony of Officer Bryant. We cannot find any testimony of this witness which shows the defendant was aware of the victim's boyfriend. Officer Bryant testified that he arrested a person in December 1994 who said he was the victim's boyfriend. This was three months after the killing. Laura Baird, the woman with whom the victim and the boyfriend lived, did not testify that the defendant knew of the boyfriend prior to the date of the killing.

The State further says the defendant mentioned the boyfriend on the date of the murder. However, these statements were made by the defendant after the killing, and the defendant was quoting what his estranged wife had revealed to him about the existence of the boyfriend.

The State further argues that the evidence shows the defendant deliberated before killing the victim because he placed his tools in his car before going to meet her. This theory is based upon the fact that the defendant did not customarily carry his tools in his car.

It is fairly common knowledge that carpenters and other artisans own and carry with them their own tools. Further, it is the general course for carpenters to carry their tools in a tool belt from their home to their job and back. In the context of this case, we do not think the State's theory is valid.

The time between when the defendant talked with the victim and left the job site in Loudon around 10:30 and 11:00 a.m. and when the victim bought groceries at a grocery store in Knox County at 11:48 indicates the defendant drove his car directly from the job site to where he met the victim. It more logically follows that his tools were in the car in the normal course of the defendant's routine rather than by a diabolic intent by the defendant to arm himself prior to meeting his estranged wife.

Further, the evidence shows the defendant made no effort to disguise himself when he registered at the motel. The defendant gave his correct name, address,

-13-

driver's license number, and vehicle tag number. All of this belies a pre-determined and deliberate journey to Knox County to kill his estranged wife.

We find the evidence in this case falls short of meeting the test in *State v. Brown,* 836 S.W.2d 530 (Tenn. 1992), that deliberation cannot be formed in an instant and that the proof must show the homicide was committed with a cool purpose and without passion or provocation.

The decision in *Brown* clearly shows that premeditation and deliberation do not have a synomous meaning. There may be one without the other. One may premeditate and kill in a heat of passion without deliberation, and such killing would not be murder in the first degree because at the time of the killing the mind of the accused would be incapable of acting with coolness and deliberation.

We conclude the evidence in this case is closely akin to the evidence in *State v. Thornton,* 730 S.W.2d 309 (Tenn. 1987), where the Supreme Court reduced a conviction from murder in the first degree to voluntary manslaughter.

In *Thornton,* the defendant and his wife were estranged. The defendant was attempting to reconcile with his wife. The defendant went to the home that he and his wife had shared. He discovered his estranged wife engaged in sexual intercourse with a man he did not know. The defendant shot the man in the hip. The man died later from infection which resulted from the bullet wound. The Supreme Court held, after citing various cases involving sexual acts of a spouse with another, that the passion of any reasonable person would have been inflamed and intensely aroused by the discovery of his estranged wife involved in intercourse with a strange man and that such would reduce the crime to voluntary manslaughter.

In the case before us, the defendant and the victim had met at the victim's behest and had gone to a motel to engage in sexual intercourse. It seems only reasonable that the defendant's desire to reconcile with his wife had taken a positive turn. When the defendant's estranged wife informed him she could not return to him because she had a boyfriend with whom she was living, the normal human reaction from the defendant would be to react passionately and without reflection, and such a

response defies the conclusion that the defendant acted coolly and with reflection when he killed his estranged wife.

We are of the opinion, however, as expressed in the dissenting opinion in *Thornton,* that there is sufficient evidence to show the defendant acted with malice when he killed his estranged wife and that the evidence is sufficient to find the defendant guilty of second degree murder. We therefore reduce the conviction of the defendant to second degree murder and remand the case to the trial court for sentencing on that offense.

_____

                John K. Byers, Senior Judge

CONCUR:

_____

Joseph M. Tipton, Judge

_____

Paul G. Summers, Judge

-15-

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

**FILED**

**April 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9603-CR-00092 |
| | ) | |
| | ) | Knox County |
| v. | ) | |
| | ) | Honorable Richard Baumgartner, Judge |
| | ) | |
| THOMAS J. McKEE, | ) | (First Degree Murder) |
| | ) | |
| Appellant. | ) | |

## SEPARATE OPINION

I concur with most of the reasoning and the results reached in Judge Byers' opinion. However, I respectfully disagree with his view that the evidence is insufficient to prove a deliberate and premeditated murder.

The defendant contends that the evidence does not prove that he killed the victim with premeditation and deliberation, showing instead that he acted in a heat of passion. In support, he argues that the repeated blows to the victim's head show that his actions were a result of a sudden rage initiated by the victim's rejection of him.

Judge Byers follows suit and presents a view of the evidence that rationally supports the defendant's assertions. However, the fact that the evidence could lead one to agree with Judge Byers' view of it does not focus our review upon the necessary inquiry. That inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.

-16-

Ct. 2781, 2789 (1979). In such an analysis, we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

At the time of the offense, an unlawful, intentional, premeditated and deliberate killing of another constituted first degree murder. See T.C.A. § 39-13-202(a)(1) (1991). A deliberate act was defined as "one performed with a cool purpose," and a premeditated act as "one done after the exercise of reflection and judgment." T.C.A. § 39-13-201(b)(1) and (2) (1991). In State v. Brown, 836 S.W.2d 530, 539, 543 (Tenn. 1992), our supreme court stated that deliberation required some period of reflection, without passion or provocation, and concluded that the "deliberation necessary to establish first degree murder cannot be formed in an instant." Premeditation requires a showing of a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992).

The existence of the elements of premeditation and deliberation is a question of fact to be decided by the jury. See Brown, 836 S.W.2d at 541-42. In this respect, the state of mind elements necessary to establish first degree murder are typically shown by circumstantial evidence. Id.; State v. Burlison, 868 S.W.2d 713, 717 (Tenn. Crim. App. 1993). That is, circumstances such as the use of a deadly weapon upon an unarmed victim, a particularly cruel killing, and threats to kill the victim are relevant to prove the perpetrator's state of mind with regard to premeditation and deliberation. See Brown, 836 S.W.2d at 541.

Judge Byers looks to the events immediately surrounding the killing. That evidence reflects that the defendant met with the victim and rented a motel room. While at the motel, the defendant and the victim engaged in consensual sexual

intercourse. As they were driving away from the motel, the defendant asked the victim to move back with him. When she told him no and explained that she was living with another man, the defendant stopped the car and he and the victim got out. The proof reflects that the defendant obtained a circular, blunt instrument from his car, went toward a fence located eight to ten feet away, and killed the victim by inflicting at least twelve blows of great force to her head.[1] The numerous blows caused several fractures to the vertebrae and the victim's neck and to her skull.

These facts could lead to a conclusion that the killing acts occurred while the defendant was in an emotional state. However, this does not necessarily negate first degree murder. Strong feelings and excitement can co-exist with premeditation and deliberation. State v. McAfee, 784 S.W.2d 930, 932 (Tenn. Crim. App. 1989).

> "'However, passion does not always reduce the crime since a man may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time. If the design to kill was formed with deliberation and premeditation, it is immaterial that defendant was in a passion or excited when the design was carried into effect.'"

Leonard v. State, 155 Tenn. 325, 337-38, 292 S.W. 849, 852 (1927) (quoting from 29 C.J., Homicide, § 100 at 1116-17); see also Franks v. State, 187 Tenn. 174, 179, 213 S.W.2d 105, 107 (1948).

A most telling point in the present case is the fact that the defendant on more than one occasion threatened to kill the victim. On July 31, 1994, police responded to a call involving a domestic dispute between the defendant and the victim. Immediately after the defendant was arrested, he looked at the victim and stated, "I'll get you for this, bitch" and "I'll kill you." After the defendant was put into a patrol car, he stated at least three or four more times that if it was the last thing he did, he would get even with the

---

[1] I concur with Judge Byers that the skull was admissible, primarily because it was relevant as tending to prove that the defendant intended to kill the victim. Absent the defendant stipulating or conceding before the jury that he intended to kill the victim, the victim's skull was the best evidence of the severity of the attack for intent purposes.

victim and would kill her. Also, during August 1994, the defendant again threatened the victim at the courthouse when the victim told him that she would not come back to him. He responded, "You've done it now, bitch. I'll kill you." Within two months of this threat, the defendant killed the victim after she refused to reconcile with him.

I believe that the foregoing facts justify the jury rationally concluding beyond a reasonable doubt that the defendant deliberately decided to kill the victim if she chose not to continue the relationship. This type of conditional threat followed by a killing upon fulfillment of the condition shows reflection and planning. See, e.g., State v. Morris Ray, No. 01C01-9201-CC-00025, Bedford County (Tenn. Crim. App. Mar. 1, 1993), app. denied (Tenn. July 6, 1993) (upholding first degree murder conviction when the defendant expressed the intent to kill the victim if a criminal warrant were issued and the killing occurred after a warrant issued); cf. Leonard, supra. Under such circumstances, the presence of passion would not negate the fact that the design to kill was formed with deliberation and premeditation. The conviction for first degree murder should be affirmed. I am authorized to state that Judge Paul G. Summers concurs in this opinion.

_____
Joseph M. Tipton, Judge

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

FILED

**April 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) |
| Appellee, | ) No. 03C01-9603-CR-00092 |
| | ) |
| | ) Knox County |
| v. | ) |
| | ) Honorable Richard Baumgartner, Judge |
| **THOMAS J. McKEE,** | ) |
| | ) (Murder in the First Degree) |
| Appellant. | ) |

## SEPARATE OPINION

I concur with Judge Tipton's separate opinion. I also agree with most of the reasoning and the results reached in Judge Byers' opinion. However, I respectfully disagree with Judge Byers' view that the evidence is not sufficient to prove a deliberate and premeditated murder. The facts of this case justify the jury's rational conclusion beyond a reasonable doubt that the defendant deliberately killed the victim. Therefore, I vote to affirm the conviction of murder in the first degree.

_____
PAUL G. SUMMERS, Judge