# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
April 27, 2016 Session

## STATE OF TENNESSEE v. LANCE ELLIOTT FALCON

### Appeal from the Criminal Court for Knox County
#### No. 96800      G. Scott Green, Judge

---

### No. E2015-00935-CCA-R3-CD – Filed August 17, 2016

---

The defendant, Lance Elliott Falcon, appeals his Knox County Criminal Court jury convictions of rape, statutory rape by an authority figure, and sexual battery by an authority figure, arguing that the trial court improperly commented on the defendant's credibility in front of the jury, that the trial court erred in its instructions to the jury, that the evidence was insufficient to support his convictions, that the sentence is excessive, and that the cumulative effect of the errors at trial entitles him to a new trial. Discerning no reversible error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, and ROBERT L. HOLLOWAY, JR., J. filed a concurring opinion in which D. KELLY THOMAS, JR., J. joined.

Jonathan Harwell and Scott Carpenter, Assistant District Public Defenders, for the appellant, Lance Elliott Falcon.

Herbert H. Slatery III, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Charme P. Allen, District Attorney General; and Christopher Rodgers and Kevin Teeters, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The defendant's convictions relate to his assault of his 15-year-old stepdaughter, K.A.R., on July 4, 2010.[1]

---

[1] As is the policy of this court, we refer to the victim by her initials.

In early 2010, the victim moved in with her mother and the defendant, who had been married for some three years, after having lived with her father since her parents' divorce. The three lived in a mobile home in Knox County. On July 4, 2010, the victim's mother went to work while the victim remained home with the defendant. At some point that evening, the victim fell asleep on the couch and awoke later to find the defendant "on top of" her "with his mouth in places that it shouldn't be." The victim testified that the defendant had her shorts and underwear "pulled to the side" and that his mouth was on her "vagina." After the victim "pushed him off . . . and told him to quit," the defendant went into her mother's room and stayed there until he left to pick her mother up from work.

The victim said that in the weeks that followed, the defendant endeavored to ensure that the victim was not left alone with anyone other than him, and he refused to allow her to "talk to anybody on [her] cell phone unless [she] was sitting next to [the defendant] on speaker phone so he could hear everything everyone said." At some point, the defendant "went somewhere," and the victim telephoned her father and "told him to hurry and come get" her. While staying with her father, the victim revealed the assault to her sister's boyfriend on August 6, 2010. She then told her sister and her father, who reported the abuse to authorities. Following her revelation, the victim was interviewed by Knoxville Sheriff's Office Detectives and personnel at the Child Advocacy Center.

The victim participated in two recorded telephone conversations with the defendant, one initiated by her and one initiated by the defendant. During the two calls, the defendant apologized to the victim and promised not to touch her again should she return home. Audio recordings of the telephone calls were played for the jury.

The defendant testified on his own behalf and denied the allegations. He acknowledged, as he did in his pretrial statement to the police, kissing the victim on July 4, 2010. He also acknowledged having inadvertently touched the victim inappropriately while they were performing cheerleading stunts in the pool, explaining,

> She had showed some expression to me that she liked cheerleading and was interested in it, and I myself varsity lettered in cheerleading in high school, so I was excited that we had some kind of a common interest. . . . And so, that was showing that there was something that I could work with her towards, and I . . . tried to do that by showing her techniques and things. Well, we used the pool as a spotter basically.

The defendant claimed that he thought the victim was referring to the swimming pool incident during the recorded telephone calls, saying,

-2-

There in the initial conversation, the first phone call, my preconception of what was being expressed was an incident that took place at a pool where there was some slight physical contact and then it progressed into something that was beyond what I could comprehend at that time, I might say – try to control the situation a little bit and get her feeling comfortable with me so she would just come home.

He added that "[t]here's other things that led up to this conversation that could've been misinterpreted on her part as more affection than what it actually was." He testified that his understanding of the conversation was hampered by poor cellular telephone reception and the fact that he had "smoked one and a half joints at that time in the morning." The defendant acknowledged that he had apologized to the victim for touching her inappropriately but said that he had done so only because he and her mother wanted the victim to come home. He said that his inability to understand effectuated by his smoking marijuana carried over into his interview with the police.

The defendant testified that the victim had responded negatively to efforts to discipline her for misbehavior after she moved in with him and his wife. He added that the victim did not want to attend a different high school and bristled at requirements that she put more effort into her studies.

The defendant denied that he had prevented the victim from going anywhere alone and stated that he often transported the victim to her aunt's or her grandmother's house or to stay with her father.

The victim's mother testified on behalf of the defendant that she believed the victim had manufactured the allegations so that she would be permitted to move back in with her father. She said that the victim "lies" and that the victim had responded negatively to their efforts to discipline her after she moved in with them. The victim's mother said that the victim was alone with her on more than one occasion after July 4, 2010, and before she reported the incident to her sister's boyfriend. She added that the victim also spent time alone with her maternal aunts and her maternal grandmother during that same time. She said that the victim did not report the abuse to anyone during this time and did not behave any differently toward the defendant.

Two of the victim's maternal aunts and one maternal uncle testified that the victim had not behaved any differently toward the defendant after July 4, 2010. Her two aunts testified that they had spent time alone with the victim between July 4, 2010, and August 6, 2010, and that the victim had spent time alone with her maternal grandmother.

Based upon this evidence, the jury convicted the defendant as charged of rape, statutory rape by an authority figure, and sexual battery by an authority figure. Following a sentencing hearing, the trial court imposed a total effective sentence of 12 years' incarceration, which must be served at 100 percent by operation of law.

In this appeal, the defendant contends that the trial judge erred by posing a question to the defendant that amounted to an improper comment on the defendant's credibility, that the trial court erred by denying his request for a special jury instruction, that the evidence was insufficient to support his convictions, that the sentence is excessive, and that the cumulative effect of the errors at trial deprived him of the right to a fair trial. We consider each claim in turn.

## I.     Trial Court Questioning

In his first assignment of error, the defendant contends that a question posed to the defendant by the trial judge indicated to the jury that the judge did not find the defendant credible and thus equated to an inappropriate comment on the evidence. The State contends that the defendant waived plenary review of the issue by failing to lodge a contemporaneous objection and that the judge's fleeting comment did not rise to the level of plain error.

Near the end of the defendant's testimony, the prosecutor questioned the defendant about statements he made to the victim during the recorded telephone conversations. The defendant said that he lied to the victim during the telephone call when he told her that her mother was jealous of the defendant's relationship with the victim. When asked whether he was "lying today," the defendant said, "No, sir." At that point, the following exchange occurred:

> THE COURT:  Are you telling this jury that [the victim] lied to them yesterday?
>
> WITNESS:  I'm sorry, sir.  In reference to?
>
> THE COURT:  What she testified to.
>
> WITNESS:  Yes, sir, she's lying.  This absolutely did not happen.  I'm not this person, and I – for four years, I've had to walk around, people looking at me like I'm some kind of monster, and I'm not.  I would have never hurt her or anybody else.

The defendant did not lodge a contemporaneous objection or otherwise call the potential error to the attention of the trial court but did raise the issue in his motion for new trial, where he argued, as he does on appeal, that the trial judge's question was hostile and that the tenor of the question indicated to the jury that the judge did not find the defendant to be credible. In denying the defendant's motion for new trial, the trial judge acknowledged the potential impropriety of the question but stated that the purpose of the question was to clarify the record. The court noted that, because the defendant did not lodge a contemporaneous objection, did not move for a mistrial, and did not request a curative instruction, his attempt to assign error "for the first time after the verdict" rendered the claim "untimely." The court also concluded that any error would have been harmless.

As the State and the trial court observed, the defendant did not contemporaneously object or otherwise call attention to the potential error at any time during the trial. *See* Tenn. R. Evid. 614( ) (Although subsection (b) authorizes the trial court's interrogation of witnesses, subsection (c) requires that any objection to the court's interrogation "may be made at the time or at the next available opportunity when the jury is not preset."). The defendant's failure to lodge a contemporaneous objection results in a waiver of plenary review of this issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); *State v. Jenkins*, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). For this reason, we review the issue for plain error.

Before this court will notice plain error,

"(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting and approving factors set forth in *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Our supreme court emphasized that "all five factors must be established by the record before [the supreme court] will recognize the existence of plain error." *Smith*, 24 S.W.3d at 282. Moreover, "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.*

In our view, consideration of the issue is not necessary because the defendant has failed to establish that "'a clear and unequivocal rule of law has been breached.'" *Id.* (quoting *Adkisson*, 899 S.W.2d at 641-42). Although our state constitution forbids trial judges to comment on the evidence in a case, *see* Tenn. Const. art. VI, § 9 ("The Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."), the Tennessee Rules of Evidence specifically allow the court to "interrogate witnesses," *see* Tenn. R. Evid. 614(b), as long as "the questioning complies with the constitutional mandate," *see id.*, Advisory Comm'n Comments. "So long as the inquiry is impartial, trial courts may ask questions to either clarify a point or to supply any omission." *State v. Schiefelbein*, 230 S.W.3d 88, 118 (Tenn. Crim. App. 2007) (citing *Collins v. State*, 416 S.W.2d 766 (Tenn. 1967); *Parker v. State*, 178 S.W. 438 (Tenn. 1915)). We cannot say that the single question posed by the trial court, which the court characterized as a clarifying question, breached a clear and unequivocal rule of law.

Additionally, consideration of the error is not "'necessary to do substantial justice.'" As the trial court observed, the victim's testimony was clear and unequivocal with regard to the facts of the offense. In contrast, the defendant's testimony was rambling and, at times, bordering on the incoherent. His credibility was damaged by the recorded telephone conversations and his interview with the police as well as his own admission of drug use and previous inappropriate contact with the victim. In this context, we cannot clearly say that the trial court's question had any impact upon the defendant's credibility. Consequently, the error occasioned by the question, if any, does not rise to the level of plain error.

## II. Jury Instructions

The defendant next contends that the trial court erred by denying his request for a special jury instruction on the definition of cunnilingus. He acknowledges that the trial court provided the pattern jury instruction definition of the sex act but argues that that definition permits a conviction of rape without proof of sexual penetration. The State asserts that the provided instruction is an accurate definition of the law.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend. VI; Tenn. Const. art. 1, § 6; *see State v. Bobo*, 814 S.W.2d 353, 356 (Tenn. 1991); *Willard v. State*, 130 S.W.2d 99, 100 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30. Jury instructions must, however, be reviewed in the context of the entire charge rather than in isolation. *See Sandstrom v. Montana*, 442 U.S. 510, 527 (1979) (Rehnquist, J., concurring); *see also Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."); *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997).

Although the defendant may request special instructions, jury instructions are sufficient when they adequately state the law. *State v. Gilley*, 297 S.W.3d 739, 766 (Tenn. Crim. App. 2008). When a trial court's charge to the jury is complete, it need not give additional special instructions requested by the defendant. *Id.*; *see also State v. Story*, 608 S.W.2d 599, 603 (Tenn. Crim. App. 1980).

Prior to trial, the defendant asked the court to provide the following special instruction to the jury: "'Cunnilingus' means a sex act accomplished by placing the mouth or tongue in the vagina of another where there is any intrusion, however slight.'" The court denied the request, concluding that the pattern jury instruction was an accurate statement of the law and that the defendant's requested instruction did not comply with case law. The trial court instructed the jury as follows:

> Sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however, slight, of any part of a person's body or of any object into the genital area or anal openings of the alleged victim's, the defendant's, or any other person's body, but emission of semen is not required.
>
> Cunnilingus means the sex act accomplished by placing the mouth or tongue on or in the vagina of another.

Tennessee Code Annotated section 39-13-501 defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion,

however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). Our supreme court has explained,

> The language of the statute clearly indicates a legislative intent to separate certain defined sexual acts ("intercourse, cunnilingus, fellatio, and anal intercourse") from other non-defined sexual conduct described only as "any other intrusion." The phrase, "or any other intrusion," has no modifying effect upon the defined sexual acts. The word "or," as used in the statute, is a . . . conjunction that functions merely to introduce a generic non-specific alternative.

*State v. Marcum*, 109 S.W.3d 300, 303 (Tenn. 2003). Applying these principles, we conclude that the instructions provided by the trial court were a complete and accurate statement of the law and that the instruction requested by the defendant was not. We decline the defendant's invitation to develop an interpretation of Code section 39-13-501(7) different from that provided by our supreme court in *Marcum*. Consequently, the trial court did not err by refusing to provide the defendant's requested instruction.

### III.  Sufficiency

The defendant contends that the evidence is insufficient to support his convictions. We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

-8-

As charged in this case, "[r]ape is unlawful sexual penetration of a victim by the defendant" where "[t]he sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." T.C.A. § 39-13-503(a)(2).

> Statutory rape by an authority figure is the unlawful sexual penetration of a victim by the defendant or of the defendant by the victim when:
>
> (1) The victim is at least thirteen (13) but less than eighteen (18) years of age;
>
> (2) The defendant is at least four (4) years older than the victim; and
>
>      . . . .
>
> (4) The defendant had, at the time of the offense, parental . . . authority over the victim and used the authority to accomplish the sexual penetration.

*Id.* § 39-13-53(a). "Sexual battery by an authority figure is unlawful sexual contact with . . . the defendant by a victim" when "[t]he victim was, at the time of the offense, thirteen (13) years of age or older but less then eighteen (18) years of age" and "[t]he defendant had, at the time of the offense, . . . custodial authority over the victim and used the authority to accomplish the sexual contact." *Id.* § 39-13-527(a).

The defendant asserts that the evidence was insufficient to support his convictions of rape and statutory rape by an authority figure because the State failed to establish penetration. Arguing again that sufficient proof of sexual penetration via cunnilingus requires an entry into the victim's vaginal opening, the defendant avers that the victim's testimony that the defendant placed his mouth on her vagina was insufficient to establish the necessary element of penetration. As indicated above, we decline to ascribe to the statute a definition different than that previously provided by the courts of this state. *See State v. Hoyt*, 928 S.W.2d 935, 942 (Tenn. Crim. App. 1995), *overruled on other grounds by Spicer v. State*, 12 S.W.3d 438 (Tenn. 2000) (approving definition of cunnilingus "as 'an act of sexual perversion committed by placing the mouth or tongue on or in the vagina of another.'"); *see also generally State v. Alec Joseph Mesot*, No. M2006-02599-CCA-R3-CD (Tenn. Crim. App., Nashville, Mar. 14, 2008) (defining "cunnilingus as 'a sexual activity involving oral contact with the female genitals'" where "penetration of the vagina is not required"); *State v. Reginald L. Parker*, No. 02C01-

9306-CR-00130 (Tenn. Crim. App., Jackson, Dec. 28, 1994) (cunnilingus defined as "'oral contact with female genitals'" and oral penetration not required); *State v. Michael Warren Evans*, No. 02C01-9306-CC-00124 (Tenn. Crim. App., Jackson, Mar. 2, 1994) (cunnilingus does not require penetration of vagina).

Importantly, "[t]he occurrence of penetration, even though penetration is statutorily defined, is a question of fact. Thus, if the evidence is such that any rational trier of fact could have found penetration beyond a reasonable doubt, the evidence must be deemed sufficient." *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). "[T]he testimony of a victim, by itself, is sufficient to support a conviction." *State v. Nance*, 393 S.W.3d 212, 231 (Tenn. Crim. App. 2012) (citing *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)). Given our courts' interpretation of the term "penetration" and the quantum of proof required to present a question for the trier of fact, we conclude that the State established the element of penetration in the present case.

The defendant argues that the evidence was insufficient to support his conviction of sexual battery by an authority figure because the state failed to establish any sexual contact.

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

T.C.A. § 39-13-501(6). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." T.C.A. § 39-13-501(2). The indictment in this case alleged that the defendant accomplished the offense of sexual battery by an authority figure when he "did place his hand upon the vagina of" the victim.

The victim testified that she awoke to find the defendant "on top of" her "with his mouth in places that it shouldn't be." She said that the defendant's mouth was on her vagina and that he had her shorts and underwear "pulled to the side" of her vagina with "his hand." In our view, this evidence supports the jury's finding of sexual contact.[2]

---

[2] Because the inclusion of the phrase "did place his hand upon the vagina of" in the indictment is unnecessary surplusage, the fact that the proof established sexual contact via the defendant's touching the clothing covering the victim's intimate parts does not result in a fatal variance. *See State v. Jones*, 953 S.W.2d 695, 700 (Tenn. Crim. App. 1996).

Finally, the defendant asserts that the State failed to establish that he used his parental authority over the victim to accomplish any of the offenses. *See* T.C.A. § 39-13-527(a)(3)(B) ("The defendant had, at the time of the offense, parental or custodial authority over the victim and *used the authority to accomplish the sexual contact*.") (emphasis added). The evidence established that the defendant, the victim's step-father, cultivated a close relationship with the victim after she moved into the home he shared with the victim's mother. He was often alone with the victim while her mother worked and, by his own admission, he wanted to develop a bond with the victim over their shared interest in cheerleading. The defendant referred to the 15-year-old victim as his best friend. He also testified that he wanted to "try to control the situation a little bit and get her feeling comfortable with me" during the recorded telephone conversation so that the victim would not tell her mother about the incident. This evidence sufficiently established that the defendant used his parental authority over the victim to commit the offenses.

### IV. Sentencing

The defendant contends that the 12-year sentence imposed by the trial court is excessive, arguing that the trial court erred by finding enhancement factors sufficient to support the maximum sentence within the range while rejecting the defendant's proffered mitigating factors.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

When imposing the 12-year sentence in this case, the trial court found "a number of enhancement factors" and "no mitigating factors." Specifically, the court concluded that the defendant had a previous history of criminal behavior, as evidenced by

-11-

his admission of daily drug use both at trial and in the presence report and by his offering perjured testimony, *see* T.C.A. § 40-35-114(1), and that the defendant violated a position of trust, *see id.* § 40-35-114(14).[3]  The court also found that the defendant committed the offenses against a vulnerable victim, *see id.* § 40-35-114(4), for the purpose of sexual gratification, *see id.* § 40-35-114(7), but attached no significance to either of those factors.

In our view, the trial court did not abuse its discretion by imposing within-range sentences for each of the defendant's convictions after thorough consideration of the purposes and principles of sentencing.  Under our standard of review, we are not free to reevaluate the weight and value assigned to the enhancement and mitigating factors found by the trial court.

## V.  Cumulative Error

Finally, the defendant contends that the cumulative effect of the errors at trial deprived him of the right to a fair trial.  Having considered each of the defendant's issues on appeal and concluded that the defendant is not entitled to relief for any, we need not consider the cumulative effect of the alleged errors.  *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed.").

## Conclusion

The defendant has failed to establish entitlement to relief on any of the issues presented.  Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[3] The trial court "attach[ed] different weight to that enhancement factor on the rape convictions vis-à-vis the statutory rape by an authority figure and sexual battery by an authority figure."